**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JAMES RYALS, JR., et al.,

       Plaintiffs,

       v.

HIRERIGHT SOLUTIONS, INC., et al.,

       Defendants.

Civil Action No. 3:09cv625

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT
OF PLAINTIFFS' MOTION PURSUANT TO FED. R. CIV. P. 56(f)**

COME NOW the Plaintiffs, by counsel, and for their Memorandum in Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment, and in Support of Plaintiffs' Rule 56(f) Motion, they state as follows:

**INTRODUCTION**

Defendants ask the Court to merge Rule 12(b)(6) and Rule 56 to create a new posture in which Plaintiffs be required to defend an evidentiary supported summary judgment motion at the early pre-discovery posture of a motion to dismiss. Plaintiffs are not opposed to consideration of this dispute as a Rule 56 motion, provided that they obtain the modest discovery suggested in the accompanying Rule 56(f) declaration. However, they cannot be justly forced to respond to attorney supervised employee declarations from defense witnesses not even previously disclosed, let alone deposed.

Even if this Court was to consider the Defendants' Motion as a simpler Motion to Dismiss, their position requires a very selective reading of the Amended Complaint – ignoring most of the substantive and relevant allegations.  And it depends upon an irrational framing of the issue at hand as one solely of piercing the corporate veil, in the face of the specific provisions of the Fair Credit Reporting Act which contemplate that an entity might attempt to structure itself to avoid FCRA governance and prohibit actions taken to effectuate the same.

For the reasons stated herein, Defendants' motion should be denied.

### PLAINTIFFS RULE 56(f) MOTION

Defendants' Answer, the Rule 26(f) conference, the Rule 16(b) conference and entry of the scheduling order in this case have all occurred within this past month.  By the agreed scheduling order, the parties have not yet made their Rule 26(a)(1) disclosures. Defendants have not provided a single document or shred of evidence to the Plaintiffs, outside of the present motions, and they have yet to identify a single employee or witness with knowledge.  The petitioning Defendants have not even filed an Answer in the case. It is difficult to articulate a scenario in which a motion such as this could be more premature.

The Defendants' motion should be denied outright.  The evidence to be discovered for formulation of a substantive response to this motion would be necessarily integrated with discovery already relevant to merits litigation and class certification. Regardless, with Defendant Hireright in the case, there is little defense resource benefit to an early disposition of the claims as to the co-Defendants.  There is little practical reason for such an early summary judgment motion.

Plaintiffs also believe that the very minimal evidence already available from the Defendants' own admissions (in this case and in publically available website and press release statements), the Court could properly deny summary judgment on its merits. However, in the event that the Court concludes otherwise, it should not now enter summary judgment, but instead should stay the motion to permit discovery as to the present factual dispute.

Rule 56(f) permits the Court to order a continuance of a summary judgment motion if the responding party shows by affidavit specific reasons that "it cannot present facts essential to justify its opposition [.]" Fed. R. Civ. P. 56(f). "Rule 56(f) permits a court to deny summary judgment or grant a continuance when the party opposing summary judgment is able to demonstrate through affidavits that it has not had an adequate opportunity to discover information that is essential to its opposition to summary judgment. *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir.1996)." *Lee v. Gurney*, 2009 WL 3208715 (E.D.Va. 2009) (Williams).

Rule 56(f) is even more applicable in circumstances like this one, in which the moving party seeks summary judgment based upon secreted internal relationships and conclusionary assertions that are akin to a witness stating, "I can't tell you how we operate, but we did not violate the FCRA, therefore we should be dismissed." It is uncontroverted that "[g]enerally speaking, 'sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party.' *Harrods Ltd. v. Sixty Internet Names, et al.,* 302 F.3d 214, 247 (4th Cir.2002) (citing 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2741, at 419 (3d ed.1998))." *H.H. v. Chesterfield County School Bd.*, 2007

WL 4246487 (E.D.Va. 2007)(R.Williams) *affirmed and remanded by H.H. ex rel. H.F. v. Moffett*, 335 Fed.Appx. 306, 250 Ed. Law Rep. 79 (4th Cir. 2009).

Plaintiffs have attached to their Rule 56(f) motion a declaration from their lead counsel detailing as required the limitations imposed on their response by the present lack of discovery. These limitations are summarized as follows:

The Plaintiffs' present evidence is derived mostly from the otherwise unauthenticated records of the Securities and Exchange Commission as well as from Defendants' own internet publications. Plaintiffs would necessarily seek to authenticate these documents through discovery. To the extent that Defendants will stipulate to the authenticity of these exhibits, this concern is moot.

Plaintiffs also seek discovery of the relationships – corporate, contractual and operational – between the named Defendants. Defendants have refused discovery as earlier requested by the Plaintiffs. (This discussion is noted in Defendants' attached Exhibit "A"). Plaintiffs' counsel proposed early, abbreviated discovery of the relationships between each of the named Defendants. Plaintiffs contend that in operation and in this litigation, the Defendants are attempting to disguise and conceal the actual relationships between the various Altegrity corporate entities. Even in the briefing and defense declarations, Defendants use colloquial (rather than legal or formal) phrases to describe their relationships, for example referring to Altegrity as the "great grandparent" of a controlled subsidiary, and without temporal description or limitations. An alternative could have been, for a hypothesized counter-example a statement such as, "On January 1, 2010, Altegrity as a corporation owned 100% of the shares of subsidiary Acme, Inc., which owned 100% of "Consumer Reporting Services, LLC", who was on this date, the

owner of 100% of the shares of HireRight and Explore."   Discovery of the relationships between the Defendant entities would require discovery of:

- The organizational and ownership structures of the named Defendants;

- The proper and formal legal entity for the Defendant named "USIS" in the Amended Complaint, intended as the party doing business selling governmental and commercial – obviously employment related – background investigations as "USIS" at www.usis.com.[1]

- The contractual and public records database use and ownership relationships between the named Defendants;

- How the Defendants operate to provide related products governed or argued by Plaintiffs to be governed by the FCRA;

- Shared management, control, operations or resources; and

- History of the present corporate structures and how they have evolved during the putative class period.

Plaintiffs seek an order that would permit the taking of the depositions of Defendants' three declarants and a Rule 30(b)6 deposition upon the above topics, as well as a limited set of document requests.  The depositions and document request responses would be provided before the end of May.  In the meantime, further depositions in accordance with the current scheduling order would be scheduled after the substantive production of documents, but no later than July 1, 2010.

### PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs respond to Defendants' Statement of Material Facts within the same corresponding paragraph numbers, omitting paragraphs to which there is no material dispute.

---

[1] Defendants certainly mischaracterize Plaintiffs' intention, suggesting first that they must have intended to have sued USIS International, Inc. or instead USIS Commercial (which is HireRight).

1.  The principal place of business or state of incorporation of HireRight is not material to the present motion.   Plaintiffs' address these assertions in their more germane posture in opposition to Defendants' venue motion.   Nevertheless, the facts as stated are disputed.   At the time of merger between USIS and HireRight, there still was not an Oklahoma headquarters.   In fact, Defendants publically stated that the entity was headquartered in Virginia:

> USIS is a leading provider of security screenings, background investigations, employment and drug screening services, automotive insurance underwriting services, and national security solutions to government and corporate clients. Headquartered in Falls Church, Va., the company has more than 7,000 employees that support business operations in all 50 states, U.S. territories, and overseas. USIS was formed in July 1996 following a White House initiative that led to the establishment of US Investigations Services, Inc. (USIS) as the first privatization of a government program into the private sector.[2]

2.  Defendants offer Altegrity as the "corporate great-grand parent of HireRight Solutions."  Plaintiffs do not dispute this claim, as they have no idea what it means.   In theory, Altegrity gave birth to another corporation, which then gave birth to another corporation, which then gave birth to HireRight Solutions?  Assuming that Defendants are asserting a material separation between these two entities or even this birthing scenario, these facts are disputed.  The origins of Altegrity and of HireRight were actually one of merger and then late-2009 restructuring.

Between 1996 and 2005, Altegrity was US Investigation Services, Inc. and between

---

[2] To simplify the Court's consideration of Plaintiffs' use of reprints from Defendants' websites and SEC filings, Plaintiffs have cited by block quote or verbatim passage the relevant material from each document.   A copy of these are attached collectively as Exhibit 1.  http://www.altegrity.com/Media-Detail.aspx?dpid=32 last viewed on April 20, 2010.

2005 and July 2009, Altegrity was USIS.[3] In June 2008, Defendants announced that

HireRight was merging with USIS Investigations Services, LLC – which on that date was

the actual legal entity that is now Altegrity. They represented:

> US Investigations Services, LLC (USIS), a leading provider of pre-
> employment and drug testing screening solutions and the largest provider
> of security investigations to the federal government, and HireRight, Inc., a
> leading provider of on-demand employment background and drug
> screening solutions, today announced that the companies have signed a
> definitive agreement to merge[.] […] Upon completion of the merger,
> HireRight will be combined with the USIS Commercial Services
> Division.[4]

3. Plaintiffs dispute that Altegrity is merely a passive holding company. In fact, as

the facts detailed in paragraph 2 evidence, the construction of the multiple subsidiary

relationships apparently did not occur until late 2009, well into the putative class period.

Defendants explain:

> Altegrity was formed in July 2009 as a holding company for our three
> business lines at the time: USIS, HireRight, and Explore. US
> Investigations Services (the corporate name and brand from 1996 to 2005)
> and USIS (from 2005 to 2009) were the corporate names and brands that
> served us well in our early years. With the acquisitions of Explore (2005)
> and HireRight (2008), and our commitment to continue growing
> organically and through acquisitions, it was time to better align our
> corporate name and brand with our future growth plans by launching the
> Altegrity holding company structure.[5]

In fact, the actual holding company appears to be an entirely different legal entity – not

present in this action – Altegrity Holding Corp.[6] Altegrity is publically understood as

---

[3] http://www.altegrity.com/Fact-Sheet.aspx last viewed on April 22, 1010.
[4] http://www.altegrity.com/Media-Detail.aspx?dpid=32 last viewed on April 20, 2010.
[5] http://www.altegrity.com/Fact-Sheet.aspx last viewed on April 22, 1010.
[6] Securities and Exchange Commission filing dated November 11, 2009, http://www.sec.gov/Archives/edgar/data/1411800/000118143109052793/xslFormDX01/primary_doc.xml last viewed on April 20, 2010.

more than a holding company – providing FCRA services and products, albeit through its subsidiaries:

> Altegrity, Inc., through its subsidiaries, provides background investigation and security solutions, on-demand employment background and drug screening services, and insurance information services in the United States and internationally. It offers information and security services, including background investigations, training, security solutions, information management and support, litigation support, and data analytics to government agencies and commercial enterprises. The company also provides on-demand employment background screening, drug and health screening, and employee eligibility solutions that help employers to automate, manage, and control screening and related programs.[7]

4 - 6.   The facts asserted in paragraphs 4, 5 and 6 of Defendants' statement are disputed.   First, they are stated not as facts, but rather as general legal conclusions.   The question of whether or not Altegrity is a nationwide consumer reporting agency requires more for an answer than Defendants' bald assertion that it is not FCRA governed. Second, Plaintiffs do not accept the conclusionary representations of the Defendants' litigation affiants in place of actual discovery – including depositions of these proposed witnesses.   Accordingly, they have moved for such discovery by way of Rule 56(f).

However, as detailed in argument below, the issue is whether or not Altegrity and its controlled subsidiaries operate as an integrated nationwide consumer reporting agency.   The publically known evidence indicates that they do.    Altegrity is the active centralizing component of the Defendants' unified business stating:

> <u>Altegrity</u>, Inc., through its subsidiaries, <u>provides background investigation and security solutions, on-demand employment background and drug screening services</u>, and insurance information services in the United States

---

[7]

http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=61710208 last viewed on April 20, 2010.

and internationally. It offers information and security services, including <u>background investigations,</u> training, security solutions, information management and support, litigation support, and data analytics <u>to government agencies and commercial enterprises. The company also provides on-demand employment background screening, drug and health screening, and employee eligibility solutions</u> that help employers to automate, manage, and control screening and related programs.[8] (emphasis added).

Defendant itself represents that "Altegrity is the largest commercial provider of background investigations for the government; the trusted supplier of on-demand employment background screening to more than 25 percent of the Fortune 500; [and] one of the principal sources of data services to the insurance industry[.]"[9] Contrary to its recent and convenient litigation reclassification of itself as a mere holding company, Altegrity publicly describes itself as a "global screening and security services provider."[10] When they merged and created the new relevant entities in 2008 and 2009, it was the USIS (Altegrity) and HireRight ambition that "[t]he strategic combination of the two companies [would] provide customers with a comprehensive and integrated range of solutions for managing and mitigating employment related business risk."[11] Far from the passive holding company business model, the US Investigations Services, Inc. (now known as Altegrity) CEO boasted,

The combined company is much more than a background information or employment screening company. Through this strategic combination we become an information solutions company, a company that collects, processes, and analyzes information, and then delivers great advice to help a client solve a problem. We create solutions for our customers through

---

[8] *Id.*
[9] http://www.altegrity.com/Our-Companies.aspx last viewed on April 22, 2010.
[10] <u>http://www.hireright.com/pressreleasedetail.aspx?dpid=50</u> last viewed on April 22, 2010.
[11] http://www.altegrity.com/Media-Detail.aspx?dpid=32 last viewed on April 20, 2010.

our software, databases, superior processes, and consultative approach.[12]

7. and 8.  While as argued below, traditional corporate formalities are largely immaterial in determining whether an operation is a FCRA governed nationwide consumer reporting agency.   This case is not brought as an action against management personnel, natural persons or anyone else beyond the entities engaged in collecting, maintaining and owning the consumer reporting agency database.   Nevertheless, the asserted facts stated in paragraphs 7 and 8 are disputed to the extent that they express or imply a conclusion that the Defendants operate as independent of active Altegrity control. Defendants even characterized and acknowledge their functioning as a single entity under the family title "USIS" before adopting the name "Altegrity" by name change.  For example, when describing an internal promotion of a USIS employee to president of Explore, Defendants' press release stated:

> USIS promotes J. Philip Casey to President of Explore Information Services - FALLS CHURCH, Va., Dec. 15, 2008 – USIS, a national leader in employment screening, a leading provider of data and information solutions to the insurance industry, and the largest supplier of security investigations to the U.S. government, has promoted J. Philip Casey to president of Explore Information Services effective immediately.[13]

As the above press release also establishes, the Defendants share management personnel. For example, Michael A. Petrullo has been the Chief Executive Officer and resident of HireRight Inc. since September 2009.  Mr. Petrullo serves as Chief Executive Officer and President of HireRight Solutions, Inc.  Mr. Petrullo also serves as Senior Vice President

---

[12] US Investigations Services, Inc./HireRight August 21, 2008 press release http://www.sec.gov/Archives/edgar/data/1168652/000110465908054258/a08-22108_1ex99d1.htm last viewed on April 20, 2010.

[13] http://www.exploredata.com/News-Detail.aspx?dpid=51 last viewed on April 20, 2010.

of Altegrity Inc. Management within the Altegrity companies is fully integrated. In a recent press release, the same Mr. Casey that "USIS" had appointed to head Explore, was moved into the "Altegrity Commercial Services Group" as Chairman.

9. Plaintiffs do not dispute the facts asserted in paragraph 9 to the extent they are germane.

10 – 13. Plaintiffs do not have a present basis to dispute Defendants' assertions regarding "USIS International". The named defendant is actually "USIS," the formal corporate name of which Defendants continue to conceal. Plaintiffs acknowledge as to USIS a lack of evidence that requires basic discovery. But the question is not as Defendants suggest, whether "USIS" is an integrated part of the Altegrity reporting agency, but rather whether Plaintiffs have served the proper party. The named Defendant "USIS" publically concedes its role in the integrated Altegrity consumer reporting agency, but has remained as cryptic regarding its actual identity publically as it has in this litigation. USIS sells background checks as part of its core function and does so to both governmental and commercial customers:

> USIS uses a combination of proprietary IT technology, extensive secure databases, and its highly committed workforce to set it apart from the competition. USIS specializes in providing information and security services to government agencies and commercial enterprises. Headquartered in Falls Church, Virginia, USIS delivers background screening and risk management solutions [.][14]

USIS performs traditional background checks in employment for commercial businesses.[15] It even sells a product that expressly acknowledges this core business. "UIS PreClear TM is specifically designed to help employers determine—before

---

[14] http://www.usis.com/Fact-Sheet.aspx last viewed on April 20, 2010.
[15] http://www.usis.com/Commercial.aspx last viewed on April 20, 2010.

investing time and expense in a full investigation—the likelihood of a candidate receiving a clearance."

*Id*. USIS also maintains its headquarters in the same building and even suite as Altegrity and links itself publically as part of Altegrity and engaged with its related entities Explore and HireRight.[16]

14 – 15.  The facts stated in paragraphs 14 and 15 are not disputed.

16.  The facts proffered in paragraph 16 are disputed.  Plaintiffs have moved for discovery and a Rule 56(f) stay.  A complete response will require this.

However, even on the present record, the Court cannot fairly accept Defendants' assertion that no information has ever been provided by Explore regarding the named Plaintiffs.  Defendants' own declarations and correspondence from counsel attached as Defendants' Exhibits "A" and "D" actually evidence otherwise.   Remarkably, in an effort to demonstrate their lack of integration, Defendants offer conclusive proof to the contrary.   The named Plaintiffs and most consumers regarding whom Defendants furnish an employment consumer report will have applied as truck, bus or other commercial drivers.  The process that the Defendants use to generate an employment consumer report is described by counsel as one that includes the behind-the-scene exchange of information about public record moving violations.

By the Defendants' account, when an employee driver applicant gives Defendants permission to access a consumer report through HireRight, HireRight's computer will check with Explore's computer to obtain as "Yes, there is a moving violation" or "No, there is no moving violation" report.   Explore provides this abbreviated response and

---

[16] http://www.usis.com/Contact-Us.aspx last viewed on April 20, 2010.

then, according to Defendants, for those consumers who showed a moving violation in their report, HireRight will obtain the detailed record directly from the state DMV records.

Contrary to the conclusionary assertions that Explore does not exchange information with HireRight and does not furnish related consumer reports, the actual substantive evidence revealed by Defendants establishes that Explore is an integral part of the HireRight consumer report process. The product that Explore furnishes to HireRight is described similarly to the "E.A.R.S" product it sells to insurance companies, which "reports only those drivers with convicted [moving violation] citations."[17]

The alternative to the allegation that the Defendants operate as an integrated consumer reporting agency would be even more problematic for Explore. If it is not integrated with HireRight and yet continues to provide the "Yes/No Moving Violation" reports  - which are also consumer reports governed by the FCRA – it will have violated multiple provisions of the FCRA. These actions would comprise a variety of violations of the Act,  from 15 U.S.C. §1681b, furnishing the report to HireRight without the consumer's written permission to do so, to 15 U.S.C. §1681k, failing to notify consumers when Explore furnished to HireRight a "yes/no" report.

Beyond the Defendants' admissions in this litigation, Altegrity, HireRight and Explore publically acknowledge their integration.   HireRight and Explore are operated as an active and integrated division of Altegrity referred to as the "Altegrity Commercial Services Group."[18]

---

[17] http://www.exploredata.com/Ears.aspx last viewed on April 20, 2010.

[18] http://www.hireright.com/pressreleasedetail.aspx?dpid=50 last viewed on April 22,

**ARGUMENT**

Defendant' argument is simple – the operations of Altegrity, Explore and USIS are not sufficiently integrated and are ostensibly structured apart from that of HireRight to shield them from shared governance by the FCRA. The moving Defendants assert that they do not engage in business in unity with HireRight as a "consumer reporting agency." They assert this in two muddled postures – one upon the pleadings (Rule 12(b)(6)) and the second with the addition of general declarations from otherwise unidentified witnesses (Rule 56). Both arguments fail.

## I. THE AMENDED COMPLAINT ADEQUATELY PLEADS THAT THE DEFENDANTS ARE AN INTEGRATED CONSUMER REPORTING AGENCY.

Three Defendants – Altegrity, Explore and USIS – have filed the present Motion. The crux of their argument is that Plaintiffs' complaint should lie only as to HireRight, the non-moving Defendant. The basis for their position is an attack on what they contend is the sole basis for the inclusion of the moving parties in the Complaint – piercing the corporate veil.

Defendants' characterization of the Amended Complaint is inaccurate. Plaintiffs adequately plead sufficient facts to satisfy the Fed. R. Civ. P. 8 pleading standard. Under Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard that Rule 8(a) announces does not require 'detailed factual allegations,' but it demands more than an unadorned accusation." *E.I. duPont de Nemours and Co. v. Kolon Industries, Inc.*, --- F.Supp.2d ----, 2009 WL 2762614 (E.D.Va. 2009) (Payne) citing *Bell Atlantic v.*

2010.

*Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) at 555.  As Judge Payne explained, "in *Twombly,* the Supreme Court repeatedly emphasized that alleging plausible grounds for a claim "simply calls for enough facts to raise a reasonable expectation that *discovery* will reveal evidence" to prove the alleged claim." *E.I. duPont de Nemours and Co.*, 2009 WL 2762614.

Plaintiffs address the alter ego/corporate veil arguments below.  However, the Court does not even need to delve into this analysis for purpose of the Rule 12(b)(6) motion.   Plaintiffs plainly allege in the Amended Complaint that each of the Defendants is part of the Altegrity consumer reporting agency. *See e.*g. ¶9.   At ¶8, the Plaintiffs pled, "Altegrity is a "consumer reporting agency", as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties."   In ¶9, Plaintiffs allege that the consumer reporting databases were merged into the single USIS (now Altegrity) database prior to late 2009 and were only thereafter separated in the manner Defendants assert.  Plaintiffs have alleged, in parts relevant to the present argument:

> 1.      […] Defendants operate a national database of public records and related employment histories as a nationwide consumer reporting agency. They do so by dividing their market segments into subsidiary entities, all of which follow similar procedures and use the same FCRA database to prepare and furnish consumer reports for employment and other purposes. […].

> 8.      Altegrity is a "consumer reporting agency", as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

> 9.      Originally and prior to the creation of Altegrity, Defendants operated as separate businesses and entities.  The corporate name and

brand of USIS, Inc. ("USIS") was "USIS Investigations Services" from 1996 to 2005 and "USIS" from 2005 to 2009.   In 2005, USIS acquired and merged its database with Explore Information Services, L.L.C. ("Explore").  In 2008, USIS acquired and merged its database with HireRight Solutions, Inc. ("HireRight"), and in late 2009, Defendants consolidated the USIS non-governmental employment business market into HireRight, changing the name of controlled subsidiary USIS Commercial Services, Inc. to HireRight and retaining a component of its consumer reporting business as USIS, Inc.  As of late 2009, the "parent" operating each entity as a single nationwide consumer reporting agency is Altegrity.

11.    Defendants were and continue to disburse consumer reports to third parties under contract for monetary compensation during the class period and currently.

12.    Defendants furnished a consumer report regarding each named Plaintiff, which contained public record information likely to have an adverse effect upon their ability to obtain employment, to a third party for the purpose of determining eligibility for employment:

*First Amended Complaint*.  There of course is no good faith argument at a Rule 12(b)(6)

posture as to Altegrity and thus, the Defendants determined it necessary to create the

present Rule 12 – Rule 56 hybrid motion.  If somehow, Defendants could prevail in their

argument that the Amended Complaint improperly groups one Defendant with another,

this would not apply to Altegrity, which is in fact alleged as the principal consumer

reporting agency.

Regardless, Defendants' challenge to the several collective references to

Defendants ignores the earlier allegations in the Amended Complaint.   Plaintiffs have

alleged that Defendant Altegrity owns and operates a single public records database and

then sells products and services from that database through its subsidiary entities based

on market segment.  But all are alleged as a single consumer reporting agency operating,

using and selling from one public records database.  How Defendants allocate their

profits and sales proceeds from that one database is meaningless.  The Amended

Complaint properly alleges direct involvement by each moving Defendant in this single consumer reporting agency, independent of the alter ego/corporate veil questions.

Nevertheless, beyond the more pointed allegations that Defendants operated the single consumer reporting agency and that each sold the subject consumer reports as alleged in this action, the Plaintiffs have also adequately alleged facts sufficient if true to establish a plausible claim that the Defendants each operate as a single alter ego.   In addition to the facts as restated above, the Amended Complaint also pled:

> 7.      Altegrity Inc. ("Altegrity") was created in July 2009 as the primary parent and owner of the relevant public records database operated and used by its co-defendant subsidiaries. It is a holding company that shares common management, finances, and control with its wholly- owned United States subsidiaries and divisions, including USIS, HireRight, and Explore.

> 10.      Altegrity has controlled the acts and practices of itself and each co-defendant. Altegrity, HireRight, USIS and Explore all operate as a nationwide consumer reporting agency as governed by the FCRA. (hereafter collectively "Defendants").

*First Amended Complaint*.

In short, Plaintiffs have alleged:  The Defendants operate together as a consumer reporting agency national database of public records under the name Altegrity.  They are controlled entirely by that entity – Altegrity – and have integrated management, finances and control.   The separate of corporate structures and the designation of a "holding company" did not occur until late 2009, well after the putative class period had begun. The Defendants share the same consumer reporting database.  Defendants may disagree with these allegations.  If they do, they should be sufficiently confident to support Plaintiffs' Rule 56(f) motion to conduct immediate discovery of the corporate relationships and governance of the named Defendants.  If they do, they should as well be

willing to provide factual refutation to the otherwise damning admissions made in Defendants' public websites and SEC filings. But certainly, Defendants disagreement with the plain facts as alleged in opposing parties' complaint cannot be a sound basis for a Rule 12(b)(6) motion.

This case is brought under a federal statute – the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. Determination as to whether to pierce the corporate veil in determining substantive liability of a party under a federal statute is governed by federal, rather than state law as the "doctrine of piercing the corporate veil is not a mere procedural rule or mere judgment enforcement mechanism, but substantively determines who is liable" under the federal statute.[19] *Thomas v. Peacock*, 39 F.3d 493, 500-502 (4th Cir. 1994) (Applying this principal to an ERISA action). The standard adopted by the Fourth Circuit in *Thomas* was what it described as the "liberal veil-piercing standard" enunciated by the First Circuit:

> The general rule adopted in the federal cases is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity," [citing *Capital Telephone Co. v. FCC,* 498 F.2d 734, 738 (D.C.Cir.1974) ]. In applying this rule, <u>federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form</u> [citations omitted], an inquiry that usually gives less respect to the corporate form than does the strict common law alter ego doctrine.... (Emphasis added).

*Thomas*, 39 F.3d 503-304 citing *Alman v. Danin,* 801 F.2d 1, 3-4 (1st Cir.1986) and *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981). Thus, for example, while the state common law threshold could arguably require more, the federal threshold

---

[19] Defendants have asserted an Oklahoma state common law standard. For the reasons suggested herein, this is an incorrect statement of the law. It is also puzzling as to why Defendants would suggest Oklahoma over Virginia, where the principal moving party (Altegrity) alleged to be the controlling entity resides. Regardless, neither Oklahoma nor Virginia common law will apply.

for finding one entity an *alter ego* of another includes circumstances in which "adherence to the corporate fiction [would …] lead to an evasion of legal obligations." *Thomas*, 39 F.3d 504 (citations omitted).

Presently, the core dispute is whether Defendants operate as a "nationwide consumer reporting agency." The Amended Complaint alleges that they do. Defendants' response is that the Amended Complaint should be dismissed because since late 2009 they have worked to manufacture a corporate structure that separates the marketing and use of the Altegrity public records database between multiple controlled subsidiaries. This attempted "evasion of legal obligations" otherwise imposed by the FCRA through "creative" corporate structuring is addressed head-on in applicable FCRA regulations. The Federal Trade Commission, responsible for enforcement of the FCRA, promulgated regulations almost exactly on point to the Altegrity Defendants. *See* 16 C.F.R. Part 611. Part 611 is titled "Prohibition Against Circumventing Treatment as a Nationwide Consumer Reporting Agency" and in relevant part states:

> (a) A consumer reporting agency shall not circumvent or evade treatment as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis' as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. 1681a(p), by any means, including, but not limited to:
>
> (1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency[.]

16 C.F.R. Part 611.2. While the Plaintiffs' allegations and Defendants' descriptions of the structural changes attempted by Altegrity in late 2009 would appear on all fours with the blanket prohibition in Part 611, the FTC examples of prohibited activity even more precisely fit Altegrity's creative associations. These include "(1) *Circumvention through*

*reorganization by data type."* In this illustration of a corporate structuring example that would not be recognized as a bar to FCRA governance, the FTC proposed the following:

> XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section. […]

*Id.* Similarly, for another of the three illustrated prohibited examples, the offers:

> (3) *Circumvention by a newly formed entity.* […] . Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co. Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith Public Records Co. assembles and maintains public record information on consumers nationwide [.]

*Id.* In applying the federal standard adopted in *Thomas*, this Court cannot reasonably conclude that the FCRA's purpose "places importance on the corporate form." To the contrary, the FCRA expressly cautions that corporate form is irrelevant and that the use of corporate associations and structures to avoid its application are prohibited.

The Amended Complaint in fact provides greater detail and specificity than has been held necessary under *Twombly/Iqbal* in pleading alter ego/veil piercing. For example, In *The Flexible Benefits Council v. Feltman*, 1:08cv371, 2008 WL 2465457, *7 (E.D. Va. 2008), Judge Cacheris rejected a corporate veil Rule 12(b)(6) argument against a Complaint that principally alleged, "Upon information and belief, all of the above actions were performed in concert with Defendants Feltman and ECFC, Ltd., as well as

with other associates currently unknown to plaintiff." *Feltman* Complaint, ¶50. Similar conclusions were reached in cases with varying degrees of pleading detail. *See e.g. Osgood v. Midwest Parking Solutions*, 2009 WL 4825192 (E.D. Mo. Dec. 11, 2009) (finding plaintiffs' allegations of the individual's control and dominance of the corporate entity sufficient to survive a motion to dismiss); *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp.2d 594 (N.D. Cal. 2007) (denying motion to dismiss alter ego claim against individual who controlled corporate defendant). Indeed, in *Maganallez,* the court noted that an allegation "that one of the major shareholders has 'essentially full operational control' over [the defendant] during a specific period was sufficient to justify allowing plaintiffs to proceed on an alter ego theory." *Id*. at 608 (citing In re Napster, Inc. Copyright Litig., 354 F. Supp.2d 1113, 1122 (N.D. Cal. 2005)). In *Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial, Marine Cleaning, Inc.*, 850 F. Supp. 905 (D. Or. 1994), the plaintiffs alleged merely "that Allstate and another defendant shared the same corporate offices, used the same employees, performed the same type of work, and interchanged vehicles, real property and assets." This was sufficient to state a claim for alter ego liability, as Plaintiffs' allegations are here. *See also CitiMortgage, Inc. v. NL, Inc*., 2010 WL 1610411 (E.D.Mo. April 21, 2010); *McWilliams Ballard, Inc. v. Level 2 Development*, --- F.Supp.2d ----, 2010 WL 1068917 (D.D.C. March 24, 2010) (Applying Virginia common law); *Trabucco v. Intesa Sanpaolo, S.P.A.*, --- F.Supp.2d ----, 2010 WL 991621, *7-8 (S.D.N.Y. March 19, 2010).

**II.    SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE A REASONABLE JURY COULD FIND THAT DEFENDANTS' ARE SUFFICIENTLY INTEGRATED AS A NATIONWIDE CONSUMER REPORTING AGENCY.**

Much of this argument – nearly all of it as regards the legal thresholds in play –

has been discussed above. The Amended Complaint adequately alleges a claim as to each named Defendant. The Motion to Dismiss should be denied.

Similarly, Defendants Motion for Summary Judgment, premature as it is, is also weakly founded. Even at this early stage, by the very admissions of the moving Defendants, sufficient evidence exists upon which to reject their motion. The "issue of corporate disregard is generally one submitted to the jury." *American Protein Corp. v. A.B. Volvo,* 844 F2d 56, 59 (2nd Cir.), cert denied, 488 U.S. 852 (1988). See also *Luckett v. Bethlehem Steel Corp.,* 618 F2d 1373, 1379 (10th Cir 1980) (whether to disregard the corporate entity "is a fact question which should ordinarily be submitted to the jury"); *Key v. Liquid Energy Corp.,* 906 F2d 500, 503 (10th Cir 1990) ("whether a separate corporate structure was adopted for the purpose of fraud or illegality is ordinarily a fact question for the jury"); *FMC Finance Corp. v. Murphree,* 632 F2d 413, 421 n 5 (5th Cir 1980) ("this Court holds that the issue of corporate entity disregard is one for the jury").

While Defendants assert the unexamined testimony of three previously unknown declarants, as detailed in Plaintiffs' Statement of Material Disputed Facts above, such testimony is largely in conflict with the also admissible public statements made by the moving Defendants through Defendants' nearly identical websites or through SEC filings. The facts that are presently known, even absent any discovery, are taken mostly verbatim from the Defendants.

The evidence already known to the Plaintiffs, and now the Court, even before a Rule 56(f) stay and related discovery reveals sufficient proof to find the Defendants an integrated nationwide consumer reporting agency. Altegrity has expressly described itself as "the largest commercial provider of background investigations for the

government [and] the trusted supplier of on-demand employment background screening to more than 25 percent of the Fortune 500[.]"[20]  It publically admits itself to be only a single "combined company" that is "much more than a background information or employment screening company" because through its "strategic combination" with its controlled subsidiaries, it has "become an information solutions company, a company that collects, processes, and analyzes information, and then delivers great advice to help a client solve a problem."  By its own description, Altegrity explains its single company as one in which "we create solutions for our customers through our software, databases, superior processes, and consultative approach."[21]

Even under traditional common law veil piercing thresholds, there is sufficient evidence at this early stage to deny Defendants' summary judgment motion.  Under the more liberal federal threshold – one in which a "corporate entity may be disregarded in interest of public convenience, fairness and equity; in particular, corporate form may not defeat overriding federal legislative policies" *Thomas v. Peacock*, 39 F.3d 493 (4th Cir. 1994) – Defendants efforts to structure their operations to circumvent FCRA governance must necessarily fail.

### CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss should be denied and their Motion for Summary Judgment should be denied, or in the alternative stayed pursuant to Fed. R. Civ. P. 56(f).

---

[20] http://www.altegrity.com/Our-Companies.aspx last viewed on April 22, 2010.
[21] US Investigations Services, Inc./HireRight August 21, 2008 press release http://www.sec.gov/Archives/edgar/data/1168652/000110465908054258/a08-22108_1ex99d1.htm last viewed on April 20, 2010.

Respectfully submitted,
**JAMES RYALS, JR., et al,**

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
Email:  lenbennett@cox.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 26rd day of April, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Amy Rachel Davis
Williams & Connolly LLP
725 12th St NW
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
Email: adavis@wc.com

Dane Hal Butswinkas
Williams & Connolly LLP
725 12th St NW
Washington, DC 20005
(202) 434-5000

Daniel Patrick Shanahan
Williams & Connolly LLP
725 12th St NW
Washington, DC 20005
 (202) 434-5174
Fax: (202) 434-5029
Email: dshanahan@wc.com

Frank G Bowman
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
Email: fbowman@wc.com

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
Email:  lenbennett@cox.net