IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | |
|---|---|
| JAMES RYALS, JR. et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>HIRERIGHT SOLUTIONS, INC., et al.,<br><br>    Defendants. | Civil Action No. 3:09cv625 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL
AND RESPONSE TO OBJECTIONS TO THE PROPOSED SETTLEMENT**

Defendants join Plaintiffs' Uncontested Motion for Final Approval of the Class Settlement and respectfully submit this Memorandum in Support of Final Approval and Response to Objections to the Proposed Settlement.[1] This Memorandum is intended to supplement Plaintiffs' discussion of two factors relevant to the Court's consideration of the fairness and adequacy of the Proposed Settlement: the strengths and weaknesses of the parties' claims and defenses, and the reception given the Proposed Settlement by the class members and federal and state regulatory authorities noticed pursuant to the Class Action Fairness Act.

The Proposed Settlement is fair, reasonable, and adequate and should be given final approval. Over the course of this litigation, Defendants have developed strong defenses to the claims asserted in the three cases being settled. These defenses have been strengthened by recent developments in the law, making the settlement even more attractive to class members now than

---

[1] Defendants take no position other than not to oppose Plaintiffs' request for incentive payments, attorneys' fees, and expenses.

when negotiations began. The Proposed Settlement allows class members to receive substantial monetary and non-monetary benefits while avoiding the significant risk entailed by continued litigation.

The objections to the Proposed Settlement do not alter this conclusion. Notably, none of the more than fifty government regulators served with notice of the settlement have objected. In addition, an extremely small percentage of class members—less than 1 in every 20,000—have objected. Acceptance of the settlement by the overwhelming majority of class members—more than 99.9%—strongly supports the adequacy of the settlement, especially in light of the high level of participation indicated by the more than 9,000 communications class members have had with the Settlement Administrator.

The nature of the objections only confirms that the settlement is fair and adequate. First, the objections do not take issue with important features of the settlement that are generally applicable to the class, such as the settlement's procedural aspects or the effectiveness of the agreed-upon practice changes. Second, to the extent the objectors provide bases for their objections (and some do not), their objections focus narrowly on individualized circumstances that do not undermine the adequacy of the settlement to the class and, in any event, rest on misunderstandings of class action liability under the Fair Credit Reporting Act ("FCRA"), the terms of the Proposed Settlement, and the continued availability of other avenues of relief. As more fully discussed below, the Proposed Settlement provides substantial monetary and non-monetary compensation to the class members without the serious risk (and delay) attendant a contested trial and subsequent appeals, and the objections offer no reason for denying final approval of the Proposed Settlement.

**I.      Background.**

HireRight Solutions, Inc. ("HireRight Solutions"), formerly USIS Commercial Services, Inc., has provided background screening of federally-regulated motor carrier drivers for almost thirty years. Endorsed by the American Trucking Association, HireRight Solutions is the motor carrier industry's primary source for comprehensive driver information and employment screening services. HireRight Solutions assists its customers in complying with the myriad legal requirements for screening drivers, including drivers entrusted with safely operating the large trucks that carry the nation's freight.[2]

If approved, the settlement will globally resolve three overlapping class action lawsuits arising out of consumer reports issued by USIS Commercial Services, Inc., later renamed HireRight Solutions, Inc.: *Ryals, et al. v. HireRight Solutions, Inc., et al.*, Case No. 09-625 (E.D. Va.); *Smith v. HireRight Solutions, Inc.*, Case No. 11-558 (E.D. Va.); and *Henderson v. HireRight Solutions, Inc.*, Case No. 11-505 (E.D. Va.). Defendants deny liability in all three cases and believe they would have prevailed if the cases had proceeded to trial. Defendants have opted to settle these cases, however, to avoid the burden and attendant costs of litigation as well as to enable them to avoid the distraction to the business and its current management of continuing to litigate allegations with respect to historical policies and practices. Since the late summer of 2008, new ownership has made significant investments in people, technology and processes, and HireRight Solutions believes that settling these cases will provide fair compensation to consumers while allowing it to remain focused on its efforts to implement

---

[2] *See, e.g.*, 49 C.F.R. §§ 391.1-391.69 (2010) (Department of Transportation's Federal Motor Carrier Safety Regulations, requiring, among other things, that motor carriers investigate drivers' employment histories and driving records before hiring them).

3

industry-leading best practices. HireRight Solutions sees this settlement as an important step in closing one chapter of its history while its new management team continues to write the next.

The *Ryals* amended complaint alleges, *inter alia*, that HireRight Solutions violated the FCRA by failing to provide timely notice as required by § 1681k of the FCRA and by failing to follow procedures required by § 1681i of the FCRA for processing consumer disputes.[3] A majority of the reports implicated by the case were issued before USIS Commercial Services, Inc. (now HireRight Solutions) was acquired by new owners and before the current management team was put in place. Accordingly, the allegations in *Ryals* focus substantially on the historical practices of USIS Commercial Services, Inc.

The *Smith* complaint alleges that HireRight Solutions failed to comply with the notification procedures required by § 1681k of the FCRA and failed to employ "reasonable procedures" to ensure accurate reporting, as required by § 1681e(b). The parties vigorously disputed through motions practice whether, even viewed in the light most favorable to Mr. Smith, such allegations stated a viable claim for relief under the FCRA. The *Henderson* amended complaint similarly alleges violations of § 1681k and § 1681e(b). *Smith* and *Henderson* were transferred to this Court and consolidated with *Ryals* solely to facilitate the global resolution of the three cases pursuant to the Proposed Settlement. *See Smith*, Case No. 11-558 (E.D. Va.), Docket No. 70; *Henderson*, Case No. 11-505 (E.D. Va.), Docket No. 75.

Beginning in August 2010, Defendants' counsel (including outside litigation counsel from two different law firms) and Defendants' insurers and their insurance coverage counsel engaged in contentious, lengthy, and complicated negotiations with Plaintiffs' counsel in *Ryals*, *Smith*, and *Henderson*. These complex arms-length negotiations, more fully described in

---

[3] Certain named plaintiffs also allege that HireRight Solutions failed to comply with § 1681e(b) of the FCRA and bring individual claims under that section of the statute.

Plaintiffs' papers, included four in-person mediation sessions facilitated by an experienced and nationally-recognized private mediator, Professor Eric Green, under the supervision of Magistrate Judge Dennis W. Donhal. The result of the negotiations is an agreement pursuant to which Defendants have established a Settlement Fund that will be used to compensate consumers for alleged violations of the FCRA dating back to October 5, 2004. Defendants also have agreed to certain process improvements that will benefit all class members in the future.

The settlement is structured into two classes. The first class (the "1681k class") is divided into three subclasses. The settlement provides fixed payments to compensate 1681k class members for HireRight Solutions' alleged violation of the notice provision of § 1681k. The second class (the "1681i class") includes consumers who previously contacted HireRight Solutions to dispute information appearing on their reports. The settlement compensates 1681i class members for HireRight Solutions' alleged violation of the dispute provisions of § 1681i and permits class members to elect to file a claim for actual damages. The Settlement Administrator will consider a 1681i class member's actual damages claim to be valid as long as the class member identifies an inaccuracy in his or her report and provides documentation to substantiate the claim.

Defendants and their insurers have contributed twenty-eight million three-hundred seventy-five thousand dollars ($28,375,000.00) to the Settlement Fund for the combined cash settlement payments, attorneys' fees, and expenses (including incentive awards), costs of notice and settlement administration, and other costs. Any excess funds remaining in the Settlement Fund after all distributions have been made shall be used for charitable purposes consistent with the settlement agreement's terms. In addition, the settlement will ensure meaningful

improvements over the legacy procedures that are the principal subject of the allegations in the complaints.

On July 1, 2011, Plaintiffs filed the Proposed Settlement, along with a Motion for Preliminary Approval of Settlement, Appointment of Class Counsel, Certification of the Settlement Classes, and for Approval of the Form, Manner and Administration of Notice. (Docket Nos. 62-63.) In compliance with the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, Defendants served written notice of the Proposed Settlement on the United States Attorney General and the Attorneys General of all fifty states and the District of Columbia. (Docket No. 66.) None of these regulatory authorities have objected to the Proposed Settlement.

On July 7, 2011, upon consideration of the Parties' preliminary approval motion and the record, the Court entered an Order of Preliminary Approval of Class Action Settlement. (Docket No. 65.) Pursuant to the preliminary approval order, the Court, among other things, (i) preliminarily certified (for settlement purposes only) a class of plaintiffs with respect to the claims asserted; (ii) preliminarily approved the Proposed Settlement; (iii) appointed the Class Representatives; (iv) appointed the Class Counsel; and (v) set the fairness hearing for November 3, 2011.

**II.     Final Approval Should Be Granted and the Objections Should Be Overruled.**

The Proposed Settlement is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the class members, especially in light of the substantial monetary and non-monetary benefits class members will receive; the relative strengths of the parties' cases; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained; and the reception by class members.

This brief supplements Plaintiffs' memorandum by focusing on two factors pertinent to the Court's consideration of the fairness and adequacy of the Proposed Settlement: the strengths and weaknesses of the parties' claims and defenses, and the amount and nature of opposition to the Proposed Settlement.

As described below, the defenses developed to the claims in this case are particularly strong, including as to liability, class certification, and damages. The strength of the defenses weighs heavily in favor of approval of the Proposed Settlement. Moreover, the relatively few asserted objections—particularly in view of the widespread active participation of class members who did not object—cast no doubt on the conclusion that the Proposed Settlement is fair, reasonable, and adequate. The settlement should be approved.

> A. **Strengths and Weaknesses of the Parties' Claims and Defenses.**
>
>> 1. **The Plaintiffs Risk Being Unable To Prove Any FCRA Violation, Much Less Any Willful FCRA Violation.**

To pursue statutory damages on a class-wide basis under the FCRA, Plaintiffs must carry the high burden of proving not only that Defendants violated the FCRA, but that they did so willfully. Under *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), a violation of the FCRA is willful only if the consumer reporting agency knew that its conduct was prohibited by the FCRA, *see id.* at 59, or if it acted according to an "objectively unreasonable" interpretation of the statute, *see id.* at 69. This is a high burden that creates a significant litigation risk for Plaintiffs particularly in circumstances where, as here, there is no FTC guidance or court of appeals decision disapproving the particular conduct in question.[4]

As experts in the litigation, two of the leading FCRA experts in the country examined

---

[4] *See, e.g.*, *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719 (7th Cir. 2008); *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934 (S.D. Ohio 2008); *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733 (S.D. Tex. 2006), *aff'd*, 224 F. App'x 415 (5th Cir. 2007) (per curiam).

HireRight Solutions' policies and procedures and concluded that the policies put in place by its new management fully comply with the FCRA and indeed are supported by FTC guidance on the relevant subjects.  For example, Plaintiffs argue that mailing notification letters pursuant to § 1681k one or more business days after delivering a consumer report to an employer is a willful violation of the FCRA.  But Defendants' experts explained that Plaintiffs' theory is inconsistent with FTC guidance, which has approved mailing such notices via first-class mail even though the widespread industry practice today is to deliver consumer reports electronically.[5]  Plaintiffs also argue that requiring consumer disputes to be filed in writing is a willful violation of § 1681i of the FCRA.  Again, however, Defendants' experts explained that Plaintiffs' theory of recovery is inconsistent with FTC guidance, which encourages (rather than discourages) the filing of disputes in writing.[6]

Because the alleged conduct was consistent with published FTC guidance, there is a significant risk Plaintiffs would be unable to establish any violation of the FCRA whatsoever.  More importantly, however, it would be very difficult against this backdrop of case law and FTC guidance for Plaintiffs to prove that HireRight Solutions willfully violated the FCRA.  Absent proof of both an FCRA violation and willfulness on the part of HireRight Solutions, Plaintiffs' statutory damages claims fail, their class action disintegrates, and class members recover nothing.  *See* 15 U.S.C. § 1681n(a)(1).  This risk is a serious and very real weakness of Plaintiffs' claims that weighs strongly in favor of final approval.

---

[5] *See* Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 Fed Reg. 18,804, 18,808 (May 4, 1990).

[6] *See* Federal Trade Commission Facts for Consumers, *available at* www.ftc.gov/bcp/edu/pubs/consumer/credit/cre34.shtm ("[I]f [you] find errors—either inaccuracies or incomplete information—in [your] . . . report[,] . . . contact the consumer reporting company and . . . [t]ell the consumer reporting company, *in writing*, what information you think is inaccurate." (emphasis added) (last modified Tues., August 24, 2010)).

### 2. The Technical Nature of the Alleged Violations Risks Denial of Class Certification or Reduced Recovery

Courts have refused to certify classes in situations, like this one, in which Plaintiffs attempt to employ the procedural mechanism of the class action to pursue technical violations of a statutory damages scheme. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003). This principle is based on the patent unfairness of awarding massive statutory damages for conduct that caused little, if any, actual injury. *See Ratner v. Chem. Bank N.Y. Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (denying certification where 130,000 class members each could claim $100 in statutory damages for failure to disclose an interest rate on credit card statements). *But see Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719-23 (9th Cir. 2010); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). This remains an open issue and a serious risk for Plaintiffs in the jurisdictions in which these cases would be litigated. *See Wilcox v. Commerce Bank*, 474 F.2d 336, 347 (10th Cir. 1973) (affirming denial of class certification under a statutory scheme); *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 278-79 (4th Cir. 2010) (Wilkinson, J., specially concurring). Even if one or more of the putative classes were certified, however, the risk of no recovery for class members would remain. A jury—faced with the all-or-nothing proposition of awarding disproportionate damages—may reasonably enter a complete defense verdict. This result occurred in a similar case that was tried before a jury in Oregon. *See Ashby v. Farmers Ins. Co.*, No. 3:01-cv-1446 (D. Or.), Docket No. 605. Finally, even if Plaintiffs were to prevail at trial, there is reason to believe that the trial court or appellate court ultimately would reduce any award to a level that reflects the technical nature of the alleged violations. The courts that have certified classes involving excessive statutory damages awards nevertheless have held that damages may be remitted at a later point. *See, e.g.*, *Murray*, 434 F.3d at 954 ("An award that would be unconstitutionally excessive may be reduced

but constitutional limits are best applied after a class has been certified." (citation omitted)).

In short, whether taken into account before, during, or after trial, the technical nature of the alleged violations, the improved procedures put in place by current management, and the excessive damages sought by Plaintiffs combine to create a serious risk that Plaintiffs would not recover a significant sum through further litigation.

### B. The Reception of the Proposed Settlement Strongly Supports Approval.

By any measure, the reception of the Proposed Settlement strongly supports approval. Despite the highly successful notice program, which provided direct notice to class members and included a settlement website on which details of the Proposed Settlement were posted, *see* Settlement Agreement ¶¶ 4.1-4.3, objections were lodged by only thirty-two (32) class members prior to the filing of Plaintiffs' Motion for Final Approval.[7] Several of these objections were received by the Court after the October 13, 2011 cut-off date for filing objections. *See id.* ¶

---

[7] Forty-one (41) letters were received by the Court before this date, thirty-two (32) of which are objections (some of which were received after the October 13, 2011 cutoff date, *see infra*, note 8). The remaining nine (9) letters are opt-out requests, *see* DE 78 (Cutrell); damages claims, *see* DE 83 (Balderas); DE 87 (Lang); DE 84 (West); DE 85 (West); notices of intent to appear, *see* DE 90 (Carter); DE 78-06 (White), and supplements to already-filed objections, *see* DE 82-3 (Wilson) (supplement to DE 82-2); DE 80 (Wyatt) (supplement to DE 78-2)).

Two additional letters (from Eugene Cole and Roderick Moreland) were received by the Court after the filing of Plaintiffs' Motion for Final Approval on October 20, 2011 and were not docketed at the time this brief was prepared. Mr. Cole complains of an alleged inaccuracy in his report from 2004 that was corrected to his satisfaction more than three years ago. Mr. Moreland's principal complaint is about his employer's conduct. These objections are not discussed further in this memorandum.

In addition, Defendants' counsel received two letters that do not appear to have been sent to the Court or Settlement Administrator. Neither letter contains an objection to the settlement. One is an exclusion request that has been forwarded to the Settlement Administrator and Class Counsel; the other is a file disclosure request that has been provided to HireRight Solutions.

5.4.1.[8] Other of the objections, we understand based on communications with Class Counsel, are to be withdrawn with the approval of the Court.[9] The Proposed Settlement thus generated remarkably few objections, especially considering the class members' widespread participation in the settlement as evidenced by the more than 9,000 telephone calls and other communications the Settlement Administrator received from class members and the nearly 3,000 claim forms filed.

The thirty-two objectors represent less than .005% of the more than 680,000 class members, or less than 1 in 20,000. The small percentage of class members who have objected to the Proposed Settlement is strong evidence of the settlement's fairness and reasonableness. *See Kovacs v. Ernst & Young (In re Jiffy Lube Sec. Litig.)*, 927 F.2d 155, 159 (4th Cir. 1991) (district court appropriately gave "great weight" to the fact that only 1 of over 12,000 class members objected to a settlement when considering the settlement's adequacy).

The low objection rate is also remarkable given the context of the lawsuit. While the Plaintiffs principally allege technical violations of a complex regulatory scheme, the underlying

---

[8] Twenty-seven (27) of the objections were received by the Court on or before the cut-off date of October 13, 2011. *See* DE 78-5 (Aubin); DE 78-14 (Baker); DE 78-09 (Benston); DE 78-7 (Biles); DE 83-1 (Bishop); DE 78-8 (Brooks); DE 78-11 (Burney); DE 82 (Cotton); DE 78-4 (Davis); DE 78-1 (DeBose); DE 78-3 (Devine); DE 80 (Dorsey); DE 78-17 (Easter); DE 80-1 (Goldsmith); DE 78-12 (Head); DE 80-2 (Ignacio); DE 78-10 (Lopez); DE 83-2 (McClure); DE 80-3 (McKinney); DE 80-4 (Morgan); DE 82-1 (Pence); DE 78-15 (Robins); DE 78-13 (Ruch); DE 78-18 (Smith); DE 78-16 (Tickle); DE 82-2 (Wilson); DE 78-2 (Wyatt). The remaining five (5) were received by the Court after the deadline and were docketed before this brief was prepared. *See* DE 86 (Balliet); DE 88 (Elliott); DE 97-1 (Jackson); DE 97 (Kenner); DE 89 (Tucker). Two additional objections (from Eugene Cole and Roderick Moreland, *see supra* note 7) were received by the Court but not docketed at the time this brief was prepared.

[9] Four class members did not object to the fairness or adequacy of the settlement but instead to their misclassification as 1681k rather than 1681i class members. *See* DE 78-14 (Baker); DE 78-09 (Benston); DE 80-1 (Goldsmith); DE 78-16 (Tickle). The parties intend to move the Court to correct these classifications, and these class members intend to withdraw their objections as moot.

background reports deal with personal and oftentimes emotionally-charged subjects, such as an individual's criminal history, driving record, alcohol and drug history, and employment performance. That the objection rate here is lower than in other approved settlements involving more mundane subject matter objectively reflects the outstanding result achieved by Class Counsel on behalf of the class members. More telling is the complete lack of objection by any of the more than fifty state and federal regulators served with notice of the Proposed Settlement pursuant to the Class Action Fairness Act. *See* Docket No. 66.

The majority of objections (25) were filed by members of the 1681k class.[10] These are class members about whom HireRight Solutions issued a consumer report during the five-year period preceding the class cut-off date but who never contacted HireRight Solutions to dispute information in any of their reports during the relevant period. These class members are entitled to a lower payment than members of the 1681i class in part because the applicable release is much narrower.

Eighteen of the twenty-five objectors from the 1681k class argue that the Proposed Settlement is inadequate because not enough money is being awarded to them based upon their unique individualized circumstances.[11] These objections are not relevant to the adequacy of the Proposed Settlement because the class members making them retain the opportunity to pursue

---

[10] *See* Pls.' Final Approval Mem., Ex. D.

[11] *See* DE 78-5 (Aubin); DE 86 (Balliet); DE 78-7 (Biles); DE 78-8 (Brooks); DE 82 (Cotton); DE 78-4 (Davis); DE 78-3 (Devine); DE 80 (Dorsey); DE 78-12 (Head); DE 97-1 (Jackson); DE 97 (Kenner); DE 80-3 (McKinney); DE 80-4 (Morgan); DE 82-1 (Pence); DE 78-13 (Ruch); DE 78-18 (Smith); DE 89 (Tucker); DE 82-2, 82-3 (Wilson). Most of the consumers who allege adverse employment actions were taken do not specify when these occurred; several that do identify adverse employment decisions that appear to be time barred because they were made prior to December 2007. *See* DE 78-14 (Baker) (denied employment based on 2005 report); DE 78-7 (Biles) (terminated from employment in August 2005); DE 78-12 (Head) (denied employment in 2006); DE 82-2, 82-3 (Wilson) (denied employment based on April 2006 report).

individual damages actions (subject to the statute of limitations and other defenses). In addition, the type of individualized harms that are the subject of these objections would not be recoverable in this class action even if the case proceeded to trial. Indeed, the Supreme Court recently stressed, in an important decision issued after negotiation of the Proposed Settlement, that the class action vehicle is inappropriate where such individualized circumstances underlie the case. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). Four of the twenty-five objectors in this class do not object to the fairness or adequacy of the settlement but merely contend that they were mis-categorized and should be included as members of the 1681i class. *See* note 9, *supra*. Finally, the remaining three objections by 1681k class members present no grounds for declining to enter final approval.[12]

Members of the 1681i class, unlike members of the 1681k class, contacted HireRight Solutions during the relevant period to dispute information that appeared on their report but did not pursue individual damages claims against HireRight Solutions independent of the class action. These class members are entitled under the Proposed Settlement to a larger payment than 1681k class members and also are given the opportunity to file a claim to establish actual damages. The reception by the members of this class in particular has been excellent based on the widespread participation in the claims process (2,979 claims filed), as well as the very small number of 1681i class members who have attempted to opt-out of the settlement (48) or object to

---

[12] *See* DE 78-11 (Burney) (objecting on ground that the amount of attorneys' fees is excessive, which is an inquiry separate and apart from whether the settlement itself is fair and adequate); DE 78-17 (Easter) (objecting on ground that the settlement would be "just a slap on the wrist," and that approving the settlement would not make "the public at large and those who are affected" aware of "companies like HireRight Solutions and their agenda"); DE 78-10 (Lopez) (complaining about reporting of tax lien levied in connection with his dispute with the IRS arising over consumer's asserted inheritance of the Commonwealth of Puerto Rico).

13

it (7).[13] The seven objections submitted by 1681i class members are dwarfed by the more than 17,000 1681i class members who did not object and the nearly 3,000 who affirmatively participated by completing and mailing claim forms.

The nature of the 1681i class member objections does not undermine the fairness or adequacy of the Proposed Settlement. Three objections concern disputes the objectors have with their former employers rather than with HireRight Solutions.[14] These class members disagree with their former employers' characterizations of incidents that occurred during their employment. The Proposed Settlement does not restrict the ability of these class members to continue to pursue these disputes with their former employers. One objector expresses concern about the size of the actual damages fund in light of the uncertainty about the number of claims that might be filed.[15] But as explained in Plaintiffs' Final Approval Memorandum, based upon the additional information about the number of claims that have been filed and the size of the fund, this uncertainty is largely removed at this time, and the payouts to claimants are expected to be consistent with the estimates made at the time of preliminary approval. *See* Pls.' Final Approval Mem., Ex. B (Ex. B at 4). One 1681i class member's objection does not state any specific objection to the Proposed Settlement or ground for denying final approval.[16] Finally, two objectors allege that their reports contained unspecified inaccuracies that caused damage in

---

[13] *See* Pls.' Final Approval Mem., Ex. B (Exs. D & E); DE 83-1 (Bishop); DE 78-1 (DeBose); DE 88 (Elliott); DE 80-2 (Ignacio); DE 83-2 (McClure); DE 78-15 (Robins); DE 78-2, 80-5 (Wyatt).

[14] *See* DE 83-1 (Bishop); DE 80-2 (Ignacio); DE 78-2, 80-5 (Wyatt). Mr. Ignacio also alleges that HireRight Solutions' DAC reporting process violates the U.S. Constitution. *See* DE 80-2.

[15] *See* DE 78-1 (DeBose).

[16] *See* DE 88 (Elliott) (claiming that a HireRight Solutions report "cost [him] and [his] family thousands of dollars in salary" and "medical insurance" but stating no specific ground on which he objects to the Proposed Settlement).

excess of the payments they are to receive under the Proposed Settlement.[17] But as discussed above, damages based upon unique individualized circumstances would not be recoverable in any event if the case were to proceed in litigation. Moreover, the opportunity to opt out and pursue an individual claim is sufficient to account for such concerns. That is particularly true here, where the availability of attorney's fees under the FCRA provides incentive for the individual prosecution of meritorious claims. *See* 15 U.S.C. § 1681n(a)(3); *cf. AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1753 (2011) (availability of attorney's fees incentivizes prosecution of individual claims).

Many of the objections (which, again, represent the views of a tiny minority of class members) are animated by dissatisfaction with employment screening generally. Indeed, a consistent theme of the objections is frustration with the Congressional policy permitting consumer reporting agencies to report criminal history information, drug and alcohol test results, and work histories to current and prospective employers.[18] Congress has the difficult task of weighing the interests of consumers who believe unfavorable information about their pasts should not impede their quest for employment with the legitimate need for such information by employers and the public. *See, e.g.*, 15 U.S.C. § 1681(a). That interest is particularly acute for HireRight Solutions' customers, many of whom are required by federal regulations to undertake precisely such screening as a matter of public safety. *See, e.g.*, 49 C.F.R. §§ 391.1-391.69. While there is room for debate regarding the proper balance to be struck, the difficult task of weighing these considerations is for the legislature. The disagreement of a tiny minority of class

---

[17] *See* DE 83-02 (McClure); DE 78-15 (Robins).

[18] *See, e.g.*, DE 78-5 (Aubin); DE 80 (Dorsey); DE 78-17 (Easter); DE 80-2 (Ignacio).

members with the balance struck by Congress is simply no basis upon which to deny final approval of the Proposed Settlement.

## III. Conclusion.

For the foregoing reasons, Defendants respectfully submit that the objections to the Proposed Settlement are without merit and that the Court should enter an order giving final approval to the Proposed Settlement.

*Date*: October 24, 2011

Respectfully submitted,

/s/ Amy R. Davis
Amy R. Davis
Va. Bar Number 72872
*Attorney for Defendants*
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
(202) 434-5000
(202) 434-5029 (facsimile)
adavis@wc.com

Dane H. Butswinkas (Va. Bar No. 30562)
dbutswinkas@wc.com
Frank Gregory Bowman (Admitted *Pro Hac Vice*)
fbowman@wc.com
Daniel P. Shanahan (Admitted *Pro Hac Vice*)
dshanahan@wc.com
*Attorneys for Defendants*
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
(202) 434-5000
(202) 434-5029 (facsimile)

**CERTIFICATE OF SERVICE**

        I hereby certify that on October 24, 2011, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Matthew James Erausquin
Consumer Litigation Associates PC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
703-273-6080
matt@clalegal.com

Christopher Colt North
751-A Thimble Shoals Blvd.
Newport News, VA 23606
(757) 873-1010
cnorthlaw@aol.com

Leonard Anthony Bennett
Consumer Litigation Associates, PC
12515 Warwick Blvd., Suite 100
Newport News, VA 23606
757-930-3660
lenbennett@cox.net

Michael D. Donovan
Noah Axler
DONOVAN SEARLES & AXLER, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
215-732-6067
mdonovan@donovanaxler.com
naxler@donovanaxler.com

Dennis Michael O'Toole
Anthony Rocco Pecora
Matthew Anderson Dooley
STUMPHAUZER, O'TOOLE, MCLAUGHLIN, MCGLAMERY & LOUGHMAN
5455 Detroit Road
Sheffield Village, OH 44054
440-930-4015
dotoole@sheffieldlaw.com
apecora@sheffieldlaw.com
mdooley@sheffieldlaw.com

*Counsel for Plaintiffs*

      I hereby certify that on October 24, 2011, I will send an copy of the foregoing to the following via first-class mail:

James A. Francis
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
215-735-8600
jfrancis@consumerlawfirm.com

Sharon M. Dietrich
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3719
sdietrich@clsphila.org

*Counsel for Plaintiffs*

                                        /s/ Amy R. Davis
                                        Amy R. Davis
                                        VA Bar Number 72872
                                        *Attorney for Defendants*
                                        WILLIAMS & CONNOLLY LLP
                                        725 12th Street, N.W.
                                        Washington, DC 20005
                                        (202) 434-5000
                                        (202) 434-5029 (facsimile)
                                        adavis@wc.com