**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| JAMES RYALS, Jr. et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09cv625 |
| | ) | |
| HIRERIGHT SOLUTIONS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF LEONARD A. BENNETT**

I, Leonard A. Bennett, declare:

1.      My name is Leonard A. Bennett.  I am over 21 years of age, of sound mind, capable of executing this declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2.      I am one of the attorneys working on behalf of the Plaintiffs in the above styled litigation, and I am an attorney and a principal of Consumer Litigation Associates, P.C., a five-attorney law firm with offices in Hampton Roads, and Fairfax, Virginia.  My primary office is at 12515 Warwick Boulevard, Suite 100, Newport News, Virginia 23606.

3.      Since 1994, I have been and presently am a member in good standing of the Bar of the highest court of the State of Virginia, where I regularly practice law.  Since 1995, I have been and presently am a member in good standing of the Bar of the highest court of the State of North Carolina.  I have also been admitted to practice before and am presently admitted to the following federal courts:

**Court:**                                                                                                 **Date Admitted:**

| | |
|---|---|
| United States Supreme Court | 2005 |
| | |
| United States Court of Appeals for the | |
| Fourth Circuit | 2002 |
| Third Circuit | 2007 |
| Ninth Circuit | 2009 |
| Sixth Circuit | 2011 |
| Eleventh Circuit | 2011 |
| | |
| United States District Court for the | |
| Eastern District of Virginia | 1994 |
| Western District of Virginia | 2004 |
| Eastern District of North Carolina | 2005 |
| Middle District of North Carolina | 2007 |
| Western District of North Carolina | 2007 |
| District of Wisconsin | 2006 |
| Eastern District of Michigan | 2003 |
| Northern District of Illinois | 2003 |
| Northern District of Ohio | 2011 |

I have been admitted *pro hac vice* in United States District Courts across the country including Alabama, California, Louisiana, Florida, Rhode Island, Hawaii, New Hampshire, Connecticut, Ohio, South Carolina, Pennsylvania, Arizona, Massachusetts, Tennessee, Georgia, Wyoming, Texas, Louisiana, Washington and Maryland.  I have never been denied admission *pro hac vice*.

5.     Since 1996, my practice has been limited to consumer protection litigation.  While my experience representing consumers has come within several areas, my most developed area of expertise is in plaintiffs litigation under the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq., and in particular the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq., and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

6.     I am on the Board of Directors of the National Association of Consumer Advocates, on the Partners Council of the National Consumer Law Center and a member of the Public Justice Foundation.  I have been named as a multi-year Virginia Super Lawyer and a 2009 Virginia Leader in the Law.

7.     I have been invited to and did testify before the United States House Financial

Services Committee on multiple occasions.  I have also been invited to and did serve on a Federal Trade Commission Round Table and Governor Kaine's Virginia *Protecting Consumer Privacy* Working Group, all in this field.

      8.     Since 2001, I have been asked to and did speak at numerous seminars and events in the area of Consumer Credit Protection litigation.  These included the following:

**2011**
Virginia Trial Lawyers Association, *Advocacy Seminar*, October 2011, Multiple locations;

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Memphis, TN, May 2011, Speaker
    *Multiple Panels;*

Stafford Publications CLE, National Webinar, April 2011
    *"FCRA and FACTA Class Actions: Leveraging New Developments in Certification, Damages and Preemption."*

**2010**

National Consumer Law Center, National Consumer Rights Conference, Boston, Speaker for Multiple Sessions, November 2010;

**2009**

Virginia State Bar, Telephone and Webinar Course, Virginia, 2009
    *"What's Going On Here?  Surging Consumer Litigation – Including Class Actions – in State and Federal Court.";*

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Chicago, IL, May 2009,
    *Multiple Panels;*

National Consumer Law Center, National Consumer Rights Conference, Philadelphia, Speaker for Multiple Sessions, November 2009;

**2008**
National Consumer Law Center, National Consumer Rights Conference, Portland, OR, Speaker for Multiple Sessions, November 2008;

Washington State Bar, Consumer Law CLE, Speaker, September 2008

**2007**

Washington State Bar, Consumer Law CLE, Speaker, July 2007

House Financial Services Committee, June 2007

National Consumer Law Center, National Consumer Rights Conference, Washington, D.C., Speaker for Multiple Sessions, November 2007

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Denver, Colorado, May 2007,
     *Multiple Panels*;

U.S. Army JAG School, Charlottesville, Virginia, Consumer Law Course Instructor, May 2007

Georgia State Bar, Consumer Law CLE, Speaker, March 2007

**2006**

Contributing Author, *Fair Credit Reporting Act, Sixth Edition*, National Consumer Law Center, 2006.

National Consumer Law Center, National Consumer Rights Conference, Miami, FL, Speaker for Multiple Sessions, November 2006

Texas State Bar, Consumer Law CLE, Speaker, October 2006
     *Federal Claims in Auto fraud Litigation*

Santa Clara University Law School, Course, March 2006
     *Fair Credit Reporting Act*.

Widener University Law School, Course, March 2006
     *Fair Credit Reporting Act*.

United States Navy, Navy Legal Services, Norfolk, Virginia, April 2006
     *Auto Fraud*;

**2005**

Missouri State Bar CLE, Oklahoma City, Oklahoma,
     *Identity Theft*;

National Consumer Law Center, National Consumer Rights Conference, Boston, Mass.
     *Multiple panels*.

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, New Orleans, Louisiana (May 2005),
     *Multiple Panels*;

4

United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island,
> *Consumer Law.*

**2004**
American Bar Association*, Telephone Seminar;*
> *Changing Faces of Consumer Law,*

National Consumer Law Center, National Consumer Rights Conference, Boston, Mass.
> *Fair Credit Reporting Act Experts Panel*; and
> *ABCs of the Fair Credit Reporting Act.*

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference,* Chicago, Illinois;
> *Multiple Panels*

Oklahoma State Bar CLE, Oklahoma City, Oklahoma,
> *Identity Theft*;

Virginia State Bar, Telephone Seminar,
> *Identity Theft*;

United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island,
> *Consumer Law*

United States Navy, Navy Legal Services, Norfolk, Virginia,
> *Auto Fraud*;

Virginia State Bar, Richmond and Fairfax, Virginia,
> *Consumer Protection Law*;

Michigan State Bar, Consumer Law Section, Ann Arbor, Michigan;
> *Keynote Speaker.*

9.     I have substantial experience in complex litigation, including class action cases, prosecuted under the Consumer Credit Protection Statutes, including the Fair Credit Reporting Act, the Equal Credit Opportunity Act, and the Fair Debt Collection Practices Act.

10.     In each of the class cases where I have represented Plaintiffs in a Consumer Credit case, the Court found me to be adequate class counsel and in each I was lead or executive committee counsel.

11.     In this case, we researched the case extensively before commencing litigation,

5

investigated, met with and gathered substantive information from dozens of potential class representatives, researched and did substantial preliminary work gathering documents, depositions and other information from previous litigation against USIS and HireRight.

12.     Prior to the commencement of this case, we were concerned that Defendants would mount a venue challenge to attempt the move of the case to a foreign venue of their greater preference.   The case law had developed strongly in Virginia, but remained uncertain generally.   We had engaged with an Ohio law firm that had recently litigated an individual FCRA case against one of the Defendants and had obtained a large number of documents and completed important depositions.  Further, we had obtained a list of consumers who had been the subject of derogatory reports furnished by Defendants.

13.     We then properly (as in within Virginia's ethical restrictions) contacted, met with and were ultimately retained by a number of additional Richmond Division consumers who would become additional class representatives.  All of this pre-filing work took place over the course of roughly a year before we concluded that we were ready to act.

14.     During the litigation, we filed complex pleadings, exchanged written discovery, opposed dispositive motions and motion to transfer venue, reviewed many thousands of documents and transcripts, engaged in additional mediation discovery with the Defendants and participated in complex mediation under the supervision of United States Magistrate Judge Dennis W. Dohnal and mediator Eric Green.

15.     While Ryals was pending, our group – all of the Virginia and Ohio attorneys now in the case – discovered the pendency of the *Smith* and *Henderson* cases.  These cases presented the substantial risk of being fully in competition with *Ryals*.  Further, counsel in *Smith* and *Henderson* were certainly as qualified as was our team.  It included Jim Francis and his firm –

6

another national expert in my field who had a string of large consumer class action and FCRA successes and with whom I had previously worked.  It also included the law firm Donovan Searles, whose principles were amongst the most successful consumer class action attorneys in the nation.  And the Smith/Henderson team included the principal attorneys in the field at Philadelphia's Community Legal Services, who were national leaders in related employment law issues related to background checks.

16.     We then made contact with The Smith/Henderson team and over a course of multiple meetings, including in person work in Philadelphia just for this purpose, the full set of attorneys came to an agreement regarding strategy, leadership, expenses and division of tasks.

17.     In August 2010, with discovery in *Ryals* to have closed during the second week of September we were engaged in nearly the singular task of completing discovery in this case. Both parties had served substantial written discovery.  We also had investigated, prepared for and scheduled a long list of depositions – both third party and of Defendants' witnesses and entities.

19.     It was at that time that both Parties expressed a shared interest in returning to a mediation posture.   We jointly contacted Hon. Dennis Dohnal and requested his assistance in overseeing a substantive mediation process, as well as obtaining a stand-down of the pending litigation until and unless the mediation process failed.

20.     After Judge Dohnal's intervention, the *Ryals* case was stayed by an Order that required regular updates and month-by-month extensions of the stay through Judge Dohnal.

21.     The Parties negotiated the selection of mediators and ultimately agreed to use Eric D. Green, a Boston mediator.  While Professor Green was by far the most expensive option available - $12,500 per day plus expenses – he was also one of the leading mediators in the

country.

22.     Preparation for the initial mediation was substantial.  The Parties continued to exchange documents and information.  In order to estimate class size and establish the lengths of time for Defendants' FCRA compliance schemes, we obtained a large volume of various computer outputs, reports and archived code.  It was then necessary to hire an outside vendor to scan and render the documents into a form that could be statistically manipulated and inputted into various search tools.  With that completed, we were able t estimate class size as well as the likely strength of our liability arguments.

23.     The mediations occurred by telephone and in person in Washington D.C.  Several days were necessary.  During the in person days, a full team of Plaintiffs' counsel was present, and every attorney there provided important assistance and help at some point during the mediation.

24.     The mediation process was steady, but slow.  We were confronted with various negotiation complexities, multiple parties (e.g. insurance counsel) and various "no more money' moments.  Ultimately we reached a tentative settlement and sketch of a structure.   Our core position was that we would not agree to a release of claims without compensation for those claims.  For example, we would not agree to release general accuracy claims for the Section 1681k violation group without additional payment to the class.

25.     Throughout mediation, we expressly stated our position that attorneys fees must be negotiated after a class result and not dependent upon it.  We also communicated the position that my law firm has consistently taken in all our class cases in this District and outside it that class counsel's fees should be determined by the monetary result obtained for the class.

26.     The parties agreement regarding Attorneys' Fees is set forth in the Settlement

8

Agreement in Section 8.3. Under the Agreement, Ryals counsel seeks 25% of the total

Settlement Fund, and counsel for Smith and Henderson seek 9% of the Settlement Fund.  This

percentage and the resulting amount is consistent with attorneys fees approved in the great

majority of class action settlements.

27.     I have settled at least a dozen class cases in this District, before Judges Payne,

Williams, Hudson, Spencer, Gibney and Ellis.  The recovery obtained for each class member in

this case is at least as fair as that obtained in every one of the approved settlements I have

negotiated to date.  In addition, the injunctive relief obtained requiring Defendant to change its

procedures and practices is an additional, valuable benefit to the class and consumers generally.

The result is fair.

28.   The attached fee related documents represent rough summaries and descriptions of

the categories and timing of work performed by various members of our team.

I declare under penalty of perjury of the laws of the United States that the foregoing is
correct.

Signed this  20th day of October, 2011.

_____-s-_____
Leonard A. Bennett

LEONARD A. BENNETT
*CONSUMER LITIGATION ASSOCIATES, P.C.*
VSB #37523
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660
(757) 930-3662 facsimile