## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| JAMES RYALS, Jr. et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09cv625 |
| | ) | |
| HIRERIGHT SOLUTIONS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF LEONARD A. BENNETT

I, Leonard A. Bennett, declare:

1.     My name is Leonard A. Bennett.  I am over 21 years of age, of sound mind, capable of executing this declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2.     I am one of the attorneys working on behalf of the Plaintiffs in the above styled litigation, and I am an attorney and a principal of Consumer Litigation Associates, P.C., a five-attorney law firm with offices in Hampton Roads, and Fairfax, Virginia.  My primary office is at 12515 Warwick Boulevard, Suite 100, Newport News, Virginia 23606.

3.     Since 1994, I have been and presently am a member in good standing of the Bar of the highest court of the State of Virginia, where I regularly practice law.  Since 1995, I have been and presently am a member in good standing of the Bar of the highest court of the State of North Carolina.  I have also been admitted to practice before and am presently admitted to the following federal courts:

**Court:**                                                             **Date Admitted:**

| | |
|---|---|
| United States Supreme Court | 2005 |
| | |
| United States Court of Appeals for the | |
| Fourth Circuit | 2002 |
| Third Circuit | 2007 |
| Ninth Circuit | 2009 |
| Sixth Circuit | 2011 |
| Eleventh Circuit | 2011 |
| | |
| United States District Court for the | |
| Eastern District of Virginia | 1994 |
| Western District of Virginia | 2004 |
| Eastern District of North Carolina | 2005 |
| Middle District of North Carolina | 2007 |
| Western District of North Carolina | 2007 |
| District of Wisconsin | 2006 |
| Eastern District of Michigan | 2003 |
| Northern District of Illinois | 2003 |
| Northern District of Ohio | 2011 |

I have been admitted *pro hac vice* in United States District Courts across the country including Alabama, California, Louisiana, Florida, Rhode Island, Hawaii, New Hampshire, Connecticut, Ohio, South Carolina, Pennsylvania, Arizona, Massachusetts, Tennessee, Georgia, Wyoming, Texas, Louisiana, Washington and Maryland. I have never been denied admission *pro hac vice.*

5.     Since 1996, my practice has been limited to consumer protection litigation. While my experience representing consumers has come within several areas, my most developed area of expertise is in plaintiffs litigation under the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq., and in particular the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq., and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

6.     I am on the Board of Directors of the National Association of Consumer Advocates, on the Partners Council of the National Consumer Law Center and a member of the Public Justice Foundation. I have been named as a multi-year Virginia Super Lawyer and a 2009 Virginia Leader in the Law.

7.     I have been invited to and did testify before the United States House Financial

Services Committee on multiple occasions.  I have also been invited to and did serve on a Federal Trade Commission Round Table and Governor Kaine's Virginia *Protecting Consumer Privacy* Working Group, all in this field.

8.       Since 2001, I have been asked to and did speak at numerous seminars and events in the area of Consumer Credit Protection litigation.  These included the following:

**2011**

Virginia Trial Lawyers Association, *Advocacy Seminar*, October 2011, Multiple locations;

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Memphis, TN, May 2011, Speaker
      *Multiple Panels;*

Stafford Publications CLE, National Webinar, April 2011
      *"FCRA and FACTA Class Actions: Leveraging New Developments in Certification, Damages and Preemption."*

**2010**

National Consumer Law Center, National Consumer Rights Conference, Boston, Speaker for Multiple Sessions, November 2010;

**2009**

Virginia State Bar, Telephone and Webinar Course, Virginia, 2009
      *"What's Going On Here?  Surging Consumer Litigation – Including Class Actions – in State and Federal Court.";*

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Chicago, IL, May 2009,
      *Multiple Panels;*

National Consumer Law Center, National Consumer Rights Conference, Philadelphia, Speaker for Multiple Sessions, November 2009;

**2008**

National Consumer Law Center, National Consumer Rights Conference, Portland, OR, Speaker for Multiple Sessions, November 2008;

Washington State Bar, Consumer Law CLE, Speaker, September 2008

**2007**

Washington State Bar, Consumer Law CLE, Speaker, July 2007

House Financial Services Committee, June 2007

National Consumer Law Center, National Consumer Rights Conference, Washington, D.C., Speaker for Multiple Sessions, November 2007

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, Denver, Colorado, May 2007,
>    *Multiple Panels*;

U.S. Army JAG School, Charlottesville, Virginia, Consumer Law Course Instructor, May 2007

Georgia State Bar, Consumer Law CLE, Speaker, March 2007

**2006**

Contributing Author, *Fair Credit Reporting Act, Sixth Edition*, National Consumer Law Center, 2006.

National Consumer Law Center, National Consumer Rights Conference, Miami, FL, Speaker for Multiple Sessions, November 2006

Texas State Bar, Consumer Law CLE, Speaker, October 2006
>    *Federal Claims in Auto fraud Litigation*

Santa Clara University Law School, Course, March 2006
>    *Fair Credit Reporting Act.*

Widener University Law School, Course, March 2006
>    *Fair Credit Reporting Act.*

United States Navy, Navy Legal Services, Norfolk, Virginia, April 2006
>    *Auto Fraud;*

**2005**

Missouri State Bar CLE, Oklahoma City, Oklahoma,
>    *Identity Theft;*

National Consumer Law Center, National Consumer Rights Conference, Boston, Mass.
>    *Multiple panels.*

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference*, New Orleans, Louisiana (May 2005),
>    *Multiple Panels;*

United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island,
    *Consumer Law.*

**2004**
American Bar Association, Telephone Seminar;
    *Changing Faces of Consumer Law,*

National Consumer Law Center, National Consumer Rights Conference, Boston, Mass.
    *Fair Credit Reporting Act Experts Panel*; and
    *ABCs of the Fair Credit Reporting Act.*

National Association of Consumer Advocates, *Fair Credit Reporting Act National Conference,*
Chicago, Illinois;
    *Multiple Panels*

Oklahoma State Bar CLE, Oklahoma City, Oklahoma,
    *Identity Theft*;

Virginia State Bar, Telephone Seminar,
    *Identity Theft*;

United States Navy, Naval Justice School (JAG Training), Newport, Rhode Island,
    *Consumer Law*

United States Navy, Navy Legal Services, Norfolk, Virginia,
    *Auto Fraud*;

Virginia State Bar, Richmond and Fairfax, Virginia,
    *Consumer Protection Law*;

Michigan State Bar, Consumer Law Section, Ann Arbor, Michigan;
    *Keynote Speaker.*

9.    I have substantial experience in complex litigation, including class action cases, prosecuted under the Consumer Credit Protection Statutes, including the Fair Credit Reporting Act, the Equal Credit Opportunity Act, and the Fair Debt Collection Practices Act.

10.    In each of the class cases where I have represented Plaintiffs in a Consumer Credit case, the Court found me to be adequate class counsel and in each I was lead or executive committee counsel.

11.    In this case, we researched the case extensively before commencing litigation,

investigated, met with and gathered substantive information from dozens of potential class representatives, researched and did substantial preliminary work gathering documents, depositions and other information from previous litigation against USIS and HireRight.

12.     Prior to the commencement of this case, we were concerned that Defendants would mount a venue challenge to attempt the move of the case to a foreign venue of their greater preference.   The case law had developed strongly in Virginia, but remained uncertain generally.   We had engaged with an Ohio law firm that had recently litigated an individual FCRA case against one of the Defendants and had obtained a large number of documents and completed important depositions. Further, we had obtained a list of consumers who had been the subject of derogatory reports furnished by Defendants.

13.     We then properly (as in within Virginia's ethical restrictions) contacted, met with and were ultimately retained by a number of additional Richmond Division consumers who would become additional class representatives. All of this pre-filing work took place over the course of roughly a year before we concluded that we were ready to act.

14.     During the litigation, we filed complex pleadings, exchanged written discovery, opposed dispositive motions and motion to transfer venue, reviewed many thousands of documents and transcripts, engaged in additional mediation discovery with the Defendants and participated in complex mediation under the supervision of United States Magistrate Judge Dennis W. Dohnal and mediator Eric Green.

15.     While Ryals was pending, our group – all of the Virginia and Ohio attorneys now in the case – discovered the pendency of the *Smith* and *Henderson* cases. These cases presented the substantial risk of being fully in competition with *Ryals*. Further, counsel in *Smith* and *Henderson* were certainly as qualified as was our team. It included Jim Francis and his firm –

another national expert in my field who had a string of large consumer class action and FCRA successes and with whom I had previously worked.  It also included the law firm Donovan Searles, whose principles were amongst the most successful consumer class action attorneys in the nation.  And the Smith/Henderson team included the principal attorneys in the field at Philadelphia's Community Legal Services, who were national leaders in related employment law issues related to background checks.

16.    We then made contact with The Smith/Henderson team and over a course of multiple meetings, including in person work in Philadelphia just for this purpose, the full set of attorneys came to an agreement regarding strategy, leadership, expenses and division of tasks.

17.    In August 2010, with discovery in *Ryals* to have closed during the second week of September we were engaged in nearly the singular task of completing discovery in this case.  Both parties had served substantial written discovery.  We also had investigated, prepared for and scheduled a long list of depositions – both third party and of Defendants' witnesses and entities.

19.    It was at that time that both Parties expressed a shared interest in returning to a mediation posture.  We jointly contacted Hon. Dennis Dohnal and requested his assistance in overseeing a substantive mediation process, as well as obtaining a stand-down of the pending litigation until and unless the mediation process failed.

20.    After Judge Dohnal's intervention, the *Ryals* case was stayed by an Order that required regular updates and month-by-month extensions of the stay through Judge Dohnal.

21.    The Parties negotiated the selection of mediators and ultimately agreed to use Eric D. Green, a Boston mediator.  While Professor Green was by far the most expensive option available - $12,500 per day plus expenses – he was also one of the leading mediators in the

7

country.

22.     Preparation for the initial mediation was substantial.  The Parties continued to exchange documents and information.  In order to estimate class size and establish the lengths of time for Defendants' FCRA compliance schemes, we obtained a large volume of various computer outputs, reports and archived code.  It was then necessary to hire an outside vendor to scan and render the documents into a form that could be statistically manipulated and inputted into various search tools.  With that completed, we were able t estimate class size as well as the likely strength of our liability arguments.

23.     The mediations occurred by telephone and in person in Washington D.C.  Several days were necessary.  During the in person days, a full team of Plaintiffs' counsel was present, and every attorney there provided important assistance and help at some point during the mediation.

24.     The mediation process was steady, but slow.  We were confronted with various negotiation complexities, multiple parties (e.g. insurance counsel) and various "no more money' moments.  Ultimately we reached a tentative settlement and sketch of a structure.   Our core position was that we would not agree to a release of claims without compensation for those claims.  For example, we would not agree to release general accuracy claims for the Section 1681k violation group without additional payment to the class.

25.     Throughout mediation, we expressly stated our position that attorneys fees must be negotiated after a class result and not dependent upon it.  We also communicated the position that my law firm has consistently taken in all our class cases in this District and outside it that class counsel's fees should be determined by the monetary result obtained for the class.

26.     The parties agreement regarding Attorneys' Fees is set forth in the Settlement

Agreement in Section 8.3. Under the Agreement, Ryals counsel seeks 25% of the total Settlement Fund, and counsel for Smith and Henderson seek 9% of the Settlement Fund. This percentage and the resulting amount is consistent with attorneys fees approved in the great majority of class action settlements.

27.     I have settled at least a dozen class cases in this District, before Judges Payne, Williams, Hudson, Spencer, Gibney and Ellis. The recovery obtained for each class member in this case is at least as fair as that obtained in every one of the approved settlements I have negotiated to date. In addition, the injunctive relief obtained requiring Defendant to change its procedures and practices is an additional, valuable benefit to the class and consumers generally. The result is fair.

28.     The attached fee related documents represent rough summaries and descriptions of the categories and timing of work performed by various members of our team. I have not asked for beyond those provided and I have not audited the summaries in detail to confirm accuracy. However, I am familiar with the work performed by the firms involved and each has participated fully and actively in our litigation and settlement of the cases.

29.     Additionally, we have not included the time summaries for the attorneys at Community Legal Services, who were also active in the litigation and mediation, or of the Oklahoma law firm that represented the Plaintiffs in *Smith* and *Henderson* after their transfer.

30.     My own law firm has operated as Lead counsel in the *Ryals* case, and co-lead in the consolidated matter. Four attorneys have participated actively, although the majority of this work was my own. The case has been fully staffed. While we have not yet completed a billing review of our time, we have incurred in excess of 1,200 hours and third party expenses in excess of $ 75,000.

I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

Signed this 21 st day of October, 2011.

_____
Leonard A. Bennett

LEONARD A. BENNETT
*CONSUMER LITIGATION ASSOCIATES, P.C.*
VSB #37523
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660
(757) 930-3662 facsimile

# Stumphauzer ∴ O'Toole

*Stumphauzer, O'Toole, McLaughlin,*
*McGlamery & Loughman, Co. LPA*
*Attorneys at Law*
5455 Detroit Road
Sheffield Village, Ohio  44054
Tel: 440.930.4001

October 18, 2010

Re:   James Ryals, Jr., et al. v. HireRight Solutions, Inc., et al.
      Case No. 3:09cv625

## STATEMENT FOR SERVICES RENDERED

4/09-   Review HireRight/USIS documents obtained in previous actions; review deposition videos;
5/09    discussion and meeting about possible class action; competing classes; subclass determination;
        appropriate class representatives; lead counsel roles; class representative liaison.

        37.7 hours

6/09-   Teleconference with L. Bennett regarding class action and litigation strategy; commence review of
7/09    USIS documents for possible Richmond reps; spreadsheet analysis; sorting class members; draft
        letters to potential class reps; strategy conference with C. Colton North; modification of letters;
        mailings.

        85.43 hours

8/09-   Commence compiling potential clients in State of Virginia; correspondence with VA class
12/09   counsel; continue prepping and compiling class lists for Virginia; commence compiling potential
        Wisconsin class; correspondence with VA class counsel; complete Wisconsin class for 2007-2009;
        continued Virginia class list for February 2008; continued compilation of potential Carolinas class
        reps; class member lists for March, April, May, June 2008; commence Ohio lists.

        138.73 hours

1/10    Preparation of letters to potential Ohio clients for March/April 2008; May/June 2008; preparation
        and mailings to new addresses; revised master lists and directory; review possible class action
        complaint; handle phone calls from possible class reps.

        28.6 hours

James Ryals, Jr., et al. v. HireRight Solutions, Inc., et al.
October 18, 2011
Page 2

2/10-   Continued calls from potential class reps; compilation and duplication of deposition videos;
5/10    review of AMS/USIS deposition videos; notation and analysis of procedures/matching rules; begin
        review of deposition material for discovery; review of previous discovery and responses; finalize
        compilation of deposition material for discovery; commence drafting potential admissions.

        49.6 hours

6/10-   Continued work on potential discovery requests and admissions; various phone calls with co-
7-10    counsel; continued compilation of names for West Virginia, Maryland, Carolinas; correspondence
        with co-counsel; handle pro hac admissions; finalization of Carolina's lists; emails and phone calls
        with co-counsel; continued work on potential discovery requests and admissions; finalize
        compilation of name for West Virginia and Maryland class reps.

        73.23 hours

8/10    Prepare for and participate in extended teleconference with L. Bennett; review documents
        provided by co-counsel; review of subpoenas and related documentation; renewed subpoena to
        AMS; handle matters regarding 30b1 depositions; review of discovery propounded by HireRight;
        phone with M. Covey regarding AMS records; attend teleconferences with co-counsel; data.

        187.73 hours

9/10    Handle matters regarding mediation PowerPoint, including edits and revisions to same;
        communications with E. Hendricks regarding PowerPoint; prepare for document review in Tulsa,
        OK; travel to and from Tulsa, OK for document review; correspondences to L. Bennett and M.
        Covey regarding documents in Tulsa, OK; prepare for and participate in teleconferences for
        upcoming mediation; correspondences with counsel; prepare for mediation in Philadelphia, PA;
        travel to and from Philadelphia, PA for mediation; participate in mediation; research on Statute of
        Limitations and Inquiry Notice.

        172.59 hours

10/10   Continuation of matters regarding document review; correspondences with L. Bennett; review
        HireRight policies and procedures pertaining to mailing of derogatory letters; preparation for
        upcoming mediation, including review of depositions, exhibits and HireRight's Mediation
        Statement; communications and teleconferences with co-counsel in preparation for mediation;
        travel to and from Washington, DC for meditation; participate in mediation.

        220.93 hours

Stumphauzer ∴ O'Toole

James Ryals, Jr., et al. v. HireRight Solutions, Inc., et al.
October 18, 2011
Page 3

11/10- Preparation of Process List for months January through June 2008; preparation for upcoming
12/10 mediations including review of previous negotiations; travel to and from Washington, D.C. for
mediation; participate in mediation; preparation for January Mediation.

     160.43 hours

1/11- Preparation for upcoming mediation; travel to and from Washington, DC for mediation;
2/11 participate in mediation; commence individual case review; review and revise letters to clients
regarding global settlement; finalize individual letters; multiple calls with individuals to update
status; preparation and review of case summaries.

     198.33 hours

3/11 Review of class summaries provided by Attorney North; communications with Plaintiff's counsel
regarding mediation of common Plaintiffs claims; handle matters regarding class notice and
administration; communications with co-counsel regarding settlement; draft Individual Case
Matrix in preparation of conference call with other counsel; participate in teleconference to
mediate individual claims; follow up review of evaluation matrix, including revisions; review of
settlement documents and communications with co-counsel regarding same; prepare and finalize
letter to J. Francis.

     56.73 hours

4/11- Further review and analysis of case evaluations and communications with E. Novak regarding
5/11 same; prepare Statement of Sponsors for M. Erausquin, mailing of same to D. Winters; extended
teleconference with E. Novak regarding case evaluations; review of proposed settlement
agreement; teleconference with J. Francis regarding case evaluations; prepare for and participate
in teleconference regarding allocation of values of individual cases; review and make revisions of
settlement agreement received from L. Bennett; multiple phone calls with individual clients
regarding settlement; teleconference with T. Hodges regarding settlement; review proposed
release and correspondence with L. Bennett regarding the same.

     33.83 hours

6/11 Draft Settlement Agreements, General Releases, and Authorization for Disbursements of
Settlement and forward same to clients; handle multiple phone calls with clients; prepare
Stipulated Dismissal and letter to Fliegel regarding same; communications with Hiller and Kaldor;
finalize and file Stipulated Dismissal and forward same to co-counsel; prepare for and participate
in teleconference with co-counsel regarding settlements; draft comparison of the negotiation class
sizes versus the new figures provided by Bowman.

     35.33 hours

## Stumphauzer ∴ O'Toole

James Ryals, Jr., et al. v. HireRight Solutions, Inc., et al.
October 18, 2011
Page 4

7/11   Prepare Order of Preliminary Approval of Class Action Settlement and the Final Order and Judgment and communications with Mr. Bowman and L. Bennett regarding same; teleconference with D. Winters regarding status of settlement checks; handle matters regarding settlement website and communications with F. Barkan regarding same; correspondences with each individual claimants regarding status of settlement checks; communications with D. Steinhilber regarding status of M. Johnson's case.

23.5 hours

8/11   Finalize and mail all correspondences to individual clients enclosing their settlement checks and settlement agreements and meet with Mr. Johnson, Mr. Webb and Mr. Simpson regarding same; setup separate phone line for class member calls; handle and assist in multiple phone calls from class members regarding claim notice and settlement questions.

90.83 hours

9/11   Handle and assist with multiple phone calls from class members regarding claim notice and settlement questions; review and revise Class Action Assistance Packet; finalize changes to Class Action Assistance Packet and mail to class members; review documentation received from Mr. Long and draft correspondence to L. Bennett regarding same; review L. Bennett's response; review reports received for Mr. Flores and Ms. Schwendeman and forward same to them; begin preparation of documentation for final hearing; teleconference with co-counsel regarding handling of objectors.

213.99 hours

10/11   Handle and assist with multiple phone calls from class members regarding claim notice and settlement questions; finalize preparation of documentation for final hearing; continue mailing Class Action Assistance Packet to class members.

83.75 hours

(Through October 7, 2011)

---

1,891.26 hours @ $375.00 per hour.............................................................................$709,222.50

Costs:  Photocopies and scanning charges...................................................................$1,498.58
        Travel expenses ...................................................................................................$16,151.55
        Postage and courier charges.............................................................................$153.02
        Total: ......................................................................................................................$17,803.15

TOTAL BALANCE DUE: ..............................................................................................$727,025.65

# Stumphauzer ∴ O'Toole

LAW OFFICES

# FRANCIS *&* MAILMAN
### A PROFESSIONAL CORPORATION
LAND TITLE BUILDING, 19TH FLOOR
100 SOUTH BROAD STREET
PHILADELPHIA, PA 19110
215-735-8600
FAX: 215-940-8000
WWW.CONSUMERLAWFIRM.COM
EMAIL: INFO@CONSUMERLAWFIRM.COM

October 18, 2011

Re:   *James Ryals, Jr., et al. v. HireRight Solutions, Inc., et al.*
      Case No. 3:09cv625
      *Bahir Smith, et al. v. HireRight Solutions, Inc., et al.*
      Case No. 09-6007
      *O'Neil Henderson, et al. v. HireRight Solutions, Inc., et al.*
      Case No. 10-00459

## STATEMENT FOR LEGAL SERVICES RENDERED

November 2009    Meet w/SD & DAS at CLS to discuss case theories, review files; Meet w/paralegal AB to go over new case, docs; Meet w/client DAS & SD at CLS for explanation of case, signing up;  meet w/DAS after; Pre-filing and case intake; Review all client file documents and case intake; review and respond to e-mail correspondence.

                 25.50 Hours (JAF)
                 0.50 Hours (JS)

December 2009    Review file for editing, revising complaint; edit and revise complaint; Pre-trial and intake---review all client docs and summaries prepared by CLS; meet with co-counsel re preparation of case, selection of claims, theory of liability; meet with MDM re the same, re our firm's role involvement; review and respond to e-mail correspondence.

                 19.40 Hours (JAF)
                 2.60 Hours (MDM)
                 0.20 Hours (DS)

January 2010     Review, edit, draft and revise Class Action Complaint; t/cs and conferences with co-counsel DAS re the; continue review of client documents; Review draft complaint; telephone conference with SD and DAS; review and respond to e-mail correspondence.

23.30  Hours (JAF)

March 2010        Review Defendant's Motion to Dismiss; pull and read cases cited; meet
                  and discuss with co-counsel; draft outline of response argument; review
                  and respond to e-mail correspondence.

                  22.20  Hours (JAF)

April 2010        Draft, edit and revise Plaintiff's Response to Defendant's Motion to
                  Dismiss; Review Defendant's Motion to Dismiss; pull and research cases,
                  citations; prepare outline of response argument; review and respond to e-
                  mail correspondence.

                  31.10  Hours (JAF)

May 2010          Review Defendant's Motion to Transfer Venue; outline argument
                  response; draft, edit and revise Plaintiff's MOL in response and opposition
                  to Defendant's Motion to Transfer Venue; Review Defendant's Motion to
                  Transfer Venue; read cases cited; prepare response outline memo; draft,
                  edit and revise plaintiff's response MOL re Defendant's MTV; meetings
                  with DAS re the same; review and respond to e-mail correspondence.

                  37.20  Hours (JAF)
                   3.30  Hours (MDM)

June 2010         Rev. Courts decision re transfer case to OK; Review Court's decision
                  transferring case to Oklahoma; discuss ramifications with co-counsel;
                  ascertain and locate local counsel; review local court rules; get admitted to
                  Oklahoma federal court; review N.D. OK FCRA decisions/class action
                  jurisprudence; research decisions from judge on same topics; Review
                  court's order granting Defendant's Motion to Transfer venue to OK; pull
                  cases; meet with JS re the decision; Review court's order and memoranda
                  transferring case to the ND OK; meet with co-counsel re
                  implications/ramifications; secure local counsel for pro hac/waiving in;
                  handle all requirements for being admitted to court; review and respond to
                  e-mail correspondence.

                  38.50 Hours (JAF)
                   1.40 Hours (MDM)
                   0.30 Hours (DS)

| | |
|---|---|
| July 2010 | Draft edit revise plaintiff's discovery requests; review. all orders from ND OK; review. Procedures for pro hac/admission; meet with paralegal AB re the same; draft interrogatories and RPD for co counsel; Rev. All orders from ND OK; rev. procedures for pro hac/admission; meet with paralegal AB re the same; review Defendant's Answer to Complaint and Affirmative Defenses; review and respond to e-mail correspondence. |

<u>29.20</u>Hours (JAF)
<u>7.20</u> Hours (TAM)
<u>0.30</u> Hours (DS)

| | |
|---|---|
| August 2010 | Review case mem plan/emails re: same; Review letter and self executing disclosure CD for DAS; telephone conference with Lenn Bennett reg: his Ryals case, mediation, collaboration, review Ryals materials; Rev case mem plan/emails re same; Review letter and self executing disclosure CD for DAS; telephone conference with Len Bennett reg: his Ryals case, mediation, collaboration, review Ryals materials; review and respond to e-mail correspondence. |

<u>20.00</u> Hours (JAF)
<u>0.30</u> Hours (TAM)

| | |
|---|---|
| September 2010 | Telephone conference with DAS & CLS re tomorrows conference strategy; review Ryals docket; Attend pre-mediation meeting at Donnovan Searles w. LB & Ohio counsel; meet with co-counsel in advance; prepare for meeting; telephone conference with JG, DAS & SD re plan for upcoming mediation; yesterday's meeting; Rev email from Rod Fliegel re DAS abscence plan while away; discuss w/ MDM; Emails with LN re setting up call; Meet with JS & MDM re Thursday meeting; case developments, Len Bennett & Getting a plan moving forward; T/C with Len Bennett, Sharon Dietrich and JS; telephone conference with Len Bennett re Ryals case; review Ryals docs; telephone conference with DAS re call w/ LB; telephone conference with co-counsel & LB re Ryals case & Working together ; mediation; review Ryals docket; Follow up with LB, DAS re call next week; Multiple telephone conference with DAS & LB re mediation; rev. Emails from Len Bennett; telephone conference with Len Bennett re Ryals case; review Ryals docs; telephone conference with DAS re call w/ LB; telephone conference with co-counsel & LB re Ryals case & Working together ; mediation; review Ryals docket; Follow up with LB & DAS re call next week; Multiple telephone conference with DAS & LB re mediation; rev. Emails from Len Bennett; review and respond to e-mail correspondence. |

<u>39.80</u> Hours (JAF)
<u>11.60</u> Hours (MDM)

 13.10 Hours (JS)
  4.60 Hours (TAM)

October 2010      Review list of potential mediators; communicate to co-counsel my views
                  on potential mediators; Conference call with Rod Fleagle and co-counsel;
                  Draft, edit and revise written discovery requests; Travel to DC; attend
                  mediation; meet with all co-counsel in case; Attend mediation; travel back
                  from DC; Lunch meeting with DAS and Sharon Dietrich regarding
                  mediation; Review Ryals document production (thousands of pages) in
                  advance of mediation; review Hireright representatives and witnesses and
                  deposition videos from Ohio litigation; review and respond to e-mail
                  correspondence.

                   48.00 Hours (JAF)
                    3.30 Hours (MDM)
                    7.80 Hours (JS)
                    0.40 Hours (DS)

November 2010     Travel to DC to meet with co-counsel in prep for tomorrow's mediation;
                  meet with co-counsel and prep for mediation; Prepare for mediation in DC
                  day 3; assemble materials; prepare agenda; review Sharon Dietrich memo
                  on possible relief/practice changes; Attend mediation; meet with co-
                  counsel DAS after to run through strategy to deal with impasse; Travel
                  back from mediation/DC; Meet with JS and MDM to bring them up to
                  speed on the mediation; discuss strategy for conference call tomorrow; t/c
                  with LB re call with Bowman, call tomorrow with mediator; meet with EN
                  re coming to DC on Fri, background of case; review SD memo on possible
                  procedural changes; t/conf with SD, DAS re practice change aspect of the
                  demand, 1681e(b) claim; make travel arrangements; review Remedial
                  Relief Memo, Lifecycle Notice, AOPC's file layout; review and respond to
                  e-mail correspondence.

                   45.60 Hours (JAF)
                    3.30 Hours (MDM)
                   10.00 Hours (JS)
                   32.50 Hours (EAN)
                    0.20 Hours (DS)

December 2010     Continue settlement negotiations with mediator post mediation; with DAS
                  re yesterday's call; t/c with Len Bennett re approach for call with mediator
                  this Friday; meet with JS re the same; T/c with mediator Eric Green and
                  LB re update from call with defense counsel; T/c with LB and mediator;
                  mediator never called in; t/c to SD to update her on calls; misc calls with
                  LB re strategy/status of negotiations; T/c with DAS and LB re call with
                  mediator last night; conf call with mediator; review and respond to e-mail
                  correspondence.

<u>30.20</u> Hours (JAF)
<u>3.70</u> Hours (EAN)

January 2011      Telephone calls with co-counsel SD, DAS & JG; Conf Call with co-counsel re update on settlement negotiations, strategy; T/c with Matt Dooley re update on telephone mediation progress with LB and Eric Green; review correspondence from LB regarding recent discussions with Hireright counsel; T/conf with LB re calls with G. Bowman, considerations/agenda for Tuesday mediation; T/C with David Searles re: status of mediation; T/C with Len Bennett re: mediation strategy; receive and review e-mails from co-counsel; T/conf with co-counsel re Tues mediation; make travel arrangements; Travel to DC for mediation tomorrow; meet with DAS, EN and SD in advance of dinner; meet with all co-counsel at diinner to prepare for tomorrow; Prepare for continued mediation and travel to DC; travel to DC with co-counsel DAS, SD, JG and EN; meet with all co-counsel in preparation for tomorrow's mediation; Attend mediation in DC; travel back from mediation; Attend another day of mediation at Williams & Connolly; meet with co-counsel for breakfast to go over our group's position; travel back from DC; Review draft MOU from both GB and DAS; draft and respond to correspondence from co-counsel regarding assignments for notice, preliminary approval and finalization of settlement agreement; review term sheet notes to compare; Review MOU; meet with Erin about deadline for drafting; review DAS draft motion to consolidate and Greg Bowman's response; agree for Dave to take first draft at settlement agreement; review and respond to e-mail correspondence.

<u>64.30</u> Hours (JAF)
<u>5.00</u> Hours (MDM)
<u>39.20</u> Hours (EAN)
<u>0.70</u> Hours (JS)

February 2011      Review, edit and revise draft settlement agreement; t/cs with co-counsel Searles, meeting with EN re notice, term sheet; review CLS write up on class plaintiffs; T/C with DAS regarding Len Bennett review of documents; review and respond to e-mail correspondence.

<u>28.30</u> Hours (JAF)
<u>2.80</u> Hours (MDM)
<u>1.30</u> Hours (EAN)
<u>1.70</u> Hours (JS)

March 2011    Conf call with co-counsel re individual cases; Meet with TM re assembly of individual case files/summaries for evaluation; telephone conference with with DAS re the same; Meet with DAS and Erin in conference room to go over settlement agreement, issues that Dave has with the defendant's draft of the settlement agreement and a list of issues to communicate with LB; T/C with Erin and DAS regarding assignments moving forward; Review all submitted materials in connection with individual case settlements; distribute and assign individual cases to lawyers in our firm for individual evaluation and assessment; T/C with DAS regarding status of settlement agreement; T/C with DAS re:  Settlement Agreement and edits to same; Edit and revise settlement agreement; prepare informal outline of events regarding the sending of notice; review  and evaluate case files of Perrine and Sheppard; draft memo to files; conference with JAF re : same; review correspondence  and memo from Anthony Pecora re: individual Hireright cases; review  and evaluate case files of Good and Washington; draft memo to files; conference with JAF re: same; assemble summary of individual cases against Hireright; make copies of all documents; create index for binder; create binder; review and respond to e-mail correspondence.

    23.50 Hours (JAF)
     7.90 Hours (MDM)
     6.60 Hours (EAN)
     2.40 Hours (TAM)


April 2011    Begin F&M firm review/determination of individual plaintiff case settlement values; assemble all documents and gather all client related information; meet with each firm lawyer, MDM, JS, GG, GHB and EN re assignment, criteria for evaluation, process, and assigned cases; speak with co-counsel about setting up protocol and methodology for review, information and write ups needed for each case; Review evaluations for individual case settlements; discuss with Erin; go over Matrix all case files and each firm's individual case assessments; Telephone conference with all counsel regarding procedure for our firm's assessment of individual case values; talk with Len Bennett; prepare for call; Hireright Conference Call - go over protocol for providing evaluations of individual cases; settlement agreement status; review all claims; prep for call; T/C with Sharon Dietrich regarding CLS's case settlement evaluation numbers; update master matrix and data sheets; go over settlement evaluations with Tina and give her instructions for updating the Matrix; Meet with Erin and go over individual case files to modify and revise proposed evaluation numbers; go through each individual plaintiff's case file and make notes on master matrix regarding reasons for our evaluations and adjustments; Review final numbers for individual case evaluations; meet with Erin regarding the same; distribute numbers to co-counsel; draft

correspondence to co-counsel regarding final evaluations and how to proceed from here; review and evaluate individual cases of Stinson, Ramos, Simpson and Rozier- from March 28-April 1; review and respond to e-mail correspondence.

  51.90  Hours (JAF)
  30.60  Hours (MDM)
  16.00  Hours (GHB)
  31.10  Hours (EAN)
   3.20  Hours (TAM)

June 2011

Review e-mails regarding status of settlement documents; t/c and e-mails with LB; Review latest changes to settlement agreement and Bennett email; review Bennett top 8 issues with Hireright changes, review practice changes section; t/conf with co-counsel; meet with EN re the same; Review latest settlement agreement, email to settlement administrator, timeline; discuss with MDM; Review Donovan Searles proposed objector language; discuss with co-counsel; Review e-mail from Sharon Dietrch regarding implementation of Settlement Agreement; Review latest edits/revisions to settlement agreement from LB; t/c with SD and JG re their concerns; draft response to Bennett email identifying the issues and concerns and what we would need to see for assurance; discuss with MDM; Review latest edits to settlement agreement and defendant's edits; t/c with Len Bennett; Edit/revise settlement agreement language re practice changes; numerous emails and tc/s with GB defense counsel and co-counsel; T/c with Greg Bowman; review most recent modification to practice changes paragraph; emails with LB, JG co-counsel; T/c with Greg Bowman re last minute modifications; r/r emails from co-counsel re final changes; agree on final language; review and respond to e-mail correspondence.

  19.90  Hours (JAF)
   8.20  Hours (MDM)
   2.20  Hours (JS)
   5.90  Hours (EAN)
   1.50  Hours (TAM)

July 2011

Work on landing pages for class members after dissemination of notice; multiple telephone calls with web developer regarding handling inquires and designing landing pages for class member inquires; multiple meetings with MDM and telephone conferences with co-counsel regarding same; review, revise, motion to consolidate, review VA law, sample motions; draft motion to transfer, review, revise, highlight motion, confer w/in firm, research OK law; review and respond to e-mail correspondence.

  28.60  Hours (JAF)

     9.50  Hours (MDM)
   51.80  Hours (EAN)
    1.20  Hours (TAM)

| | |
|---|---|
| August 2011 | Edit firm bio, draft landing pages; draft and revise protocols for firm answering calls from class members; telephone calls with web designer regarding the same; meet with MDM regarding landing pages for trucker inquires and class member questions; Work in progress - copy all of the descriptions from August 3, 2011 time entries; Telephone conferences with co-counsel regarding fielding inquires and on-line claim submissions and questions; revise and edit bio; edit and revise landing pages; edit and revise protocols for firm answering calls from class members; follow up calls with web designers regarding the same; Review all settlement documents for the reviewing and editing of notice of protocol and web developer; Review inquires for two class members; meet with paralegal TM regarding questions; address protocols for staff and instructions that stuff should be giving the class members regarding inquires; review and respond to e-mail correspondence. |

   27.60  Hours (JAF)
    3.50  Hours (MDM)
    5.70  Hours (EAN)
    0.60  Hours (TAM)
    0.30  Hours (DS)

| | |
|---|---|
| September 2011 | Review objections from class members; telephone conference with counsel regarding dividing up objections and division of assignments to co-counsel; handle calls & inquires from class members inquiring about settlement and opt-out rights; discuss same with EN; review and respond to e-mail correspondence. |

   14.10  Hours (JAF)
    3.60  Hours (EAN)
    4.90  Hours (TAM)

| | |
|---|---|
| October 2011 | Meet with TM and EN regarding preparation of time and expense records for submission in connection with fee petition; begin reviewing time sheets; Review proposed redactions from defense counsel Greg Bowman regarding class member letters; discussion with EN regarding same; Review all correspondence from co-counsel Len Bennett and other co-counsel regarding objections and opt outs and fee petition; Telephone calls with Len Bennett and co-counsel regarding claim forms and pulling together fee and expense records; Begin review of Claim Forms for assigned disks; Meet with EN re firm's assigned task of responding to |

objectors/objections to settlement; review objections; go over protocol for responding to misinformed section 1681k class members who are seeking actual damages; review and respond to e-mail correspondence.

    37.60  Hours (JAF)
    37.30  Hours (EAN)
     2.40  Hours (TAM)

November 2011     (Anticipated) Prepare for final approval hearing, confer w/in firm, review final approval motion; travel to attend, prepare for final approval meeting; attend final approval hearing, confer w/ co-counsel, travel from final approval hearing to Philadelphia; review and respond to e-mail correspondence.

    33.2 Hours (EAN)

**TOTAL FEES:**

| | |
|---|---|
| **1,150.10 hours @ Firm's hourly rates** | |
| **($325 - $525 for attorneys and $150 - $175 for paralegals)** | **$536,215.00** |

| | |
|---|---|
| **Costs:** Travel/conferences/lodging | |
| Administration Fees to Practice in Local Courts | **$7,928.87** |
| Westlaw Legal Research | **$3,792.45** |
| Copying Costs | **$29.55** |
| **TOTAL COSTS:** | **$11,750.87** |
| **TOTAL BALANCE DUE:** | **$547,965.87** |

# IN RE: HireRight Litigation

## TIME PERIOD: INCEPTION - OCTOBER 5, 2011

## TIME REPORT
## DONOVAN AXLER, LLC

1845 Walnut Street
SUITE 1100
Philadelphia, PA 19103

Categories:

A   Pre-Filing Investigation
B   Pleadings
C   Merits Discovery and Post-Filing Fact Investigation
D   Class Certification
E   Research, Briefs & Pretrial Motions
F   Settlement & Settlement Administration
G   Court Appearance & Preparations
H   Experts
I   Case Management, Conference, Interviews, Telephone Calls, Meetings, & Correspondence
J   Depositions

| ATTORNEY NAME | Status | A | B | C | D | E | F | G** | H | I | J | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael D. Donovan | P | 2.00 | 57.00 | 45.00 | | 52.00 | 70.50 | | | 81.00 | | 307.50 | $700.00 | $215,250.00 |
| Noah Axler | P | | 9.90 | | | 2.00 | 4.70 | 15.00 | | 2.90 | | 34.50 | $500.00 | $17,250.00 |
| David A. Searles | P | 2.30 | 76.50 | 15.40 | | 8.40 | 89.80 | 8.00 | | 132.10 | | 332.50 | $650.00 | $216,125.00 |
| Elise Garber | A | | | | | 8.00 | | | | | | 8.00 | $250.00 | $2,000.00 |
| Christian Koerner | PL | | | 107.50 | | 9.00 | | | | 74.90 | | 191.40 | $215.00 | $41,151.00 |
| **TOTALS** | | 4.30 | 143.40 | 167.90 | 0.00 | 79.40 | 165.00 | 23.00 | 0.00 | 290.90 | 0.00 | 873.90 | | $491,776.00 |

*Status: P=Partner, A=Associate, PL=Paralegal
**Estimated Time for Final Approval Hearing

# IN RE: HireRight Litigation

**TIME PERIOD: INCEPTION - OCTOBER 5, 2011**

## EXPENSE REPORT

**DONOVAN AXLER, LLC**

1845 Walnut Street
Suite 1100
Philadelphia, PA  19103

| Description | Cumulative Total |
|---|---|
| Reproduction/Copies | $160.50 |
| Courier | $9.90 |
| Postage | $18.40 |
| WestLaw | $4,675.00 |
| Travel, Food, Lodging | $4,196.75 |
| Filing/Pro Hac Fees | $450.00 |
| | |
| **TOTAL EXPENSES** | $9,510.55 |

# The Consumer & Employee Rights Law Firm, P.C.

751-A Thimble Shoals Blvd, Newport News, Virginia 23606
Telephone: (757) 873-1010, Facsimile: (757) 873-8375

Christopher Colt North, Attorney
cnorthlaw@aol.com
William L. Downing, Attorney
wdowninglaw@aol.com

Stephanie V. Miner, Paralegal,
Administrative Assistant
and Office Manager
sminerlaw@aol.com

October 10, 2011

RE:  Ryals v. HireRight Case

## STATEMENT FOR LEGAL SERVICES RENDERED

| | |
|---|---|
| May 2008 | Conference with Mr. Bennett regarding response of USIS Counsel to subpoena duces tecum filed by Williams, et al in the Lexis-Nexis case including pledge to identify an appropriate plaintiff to pursue similar class action against USIS and draft detailed memorandum to file; confer and e-mail proposed Plaintiff in Houston concerning proposed claim against USIS,  for preparation of inaccurate background report and his failure to receive timely notices from USIS and confer with Mr. Bennett regarding same.<br><br>1 hour. |
| August 2008 | Initial telephone conference with Matt Dooley of Stumphauser O'Toole law firm in Ohio about his litigation against USIS and draft memorandum to file.<br><br>0.5 hour |
| November 2008 | Meet with second proposed Plaintiff in Hampton, VA regarding his inaccurate HireRight report and discussion of alternatives for proceeding, review his documents and draft memorandum to file and confer with Mr. Bennett.<br><br>1 hour. |

1

| December 2008 | Confer with Mr. Bennett about proposed Washington DC co-counsel and draft memorandum to file. |

<u>0.5</u> hour

| January 2009 | Participate in telephone conference call with proposed DC co-counsel and draft memorandum to file. |

<u>0.5</u> hour

| March 2009 | Forward Lexis-Nexis pleadings to Mr. Dooley along with e-mail explaining same. Draft detailed e-mail to Mr. Bennett and Mr. Erausquin explaining nature of my contact with the Ohio firm and how I believe we can help each other. |

<u>1.0</u> hour

| May 2009 | Meet with the first two Richmond residents with claims arising out of their discharge from Greyhound in Richmond whose consumer reports were prepared by USIS, and draft detailed memorandum to Mr. Bennett concerning pros and cons of initiating class action against USIS with this potential group of approximately 10 individuals; receipt and review of e-mail from Mr. Bennett and discuss same with Mr. Bennett; meet with additional four "Greyhound" Plaintiffs and draft memos to file. |

<u>12</u> hours

| July 2009 | Confer with Ohio counsel about additional class action litigation pleadings forwarded to him, draft follow-up e-mail regarding particulars; confer with Mr. Bennett and follow-up with e-mail about my efforts to work with Ohio counsel and Ohio counsel's desire to talk to him especially about the list of potential Plaintiffs that they maintain having obtained same from USIS in other litigation, draft follow-up e-mail to Mr. Bennett. |

<u>3</u> hours

| August 2009 | Receipt and review of list of 130 individuals with Eastern Virginia addresses from Ohio Counsel who were the subject of consumer reports prepared by USIS resulting in a negative report being forwarded to their potential employers; receipt and review of memorandum from Mr. Bennett about alternatives for proceeding including adding new class reps from data bases provided by Ohio Counsel and possibly soliciting for individual cases based on inaccuracy; review subsequent list with 331 |

2

Eastern Virginia local names, especially in light of 2-year statute of limitations.

6 hours.

September 2009     Begin fielding telephone calls from dozens of potential class reps and draft memorandum to file for each telephone conference. Draft detailed memorandum concerning the first 18 notable telephone conferences out of the first 50 or so conferences overall, including initial contact with Charles Taylor of Hopewell and Franklin Hill of Richmond; draft e-mail to Mr. Bennett confirming that I had conferred with 50 people; draft e-mail to Mr. Bennett identifying five Greyhound plaintiffs available to serve as class rep; draft additional memo to Mr. Bennett and Mr. Erausquin confirming that counsel had individually vetted 82 people total including Daniel Jackson of Richmond (and explaining that many people were eliminated because they did not live in the Richmond area as we anticipated that the defendant would try to move the case out of Richmond); draft e-mail to Mr. Bennett regarding Sharon Spence, the first non-felon candidate for class rep or Greyhound group; confer with Ohio Counsel and forward additional forms for their use; begin drafting Ryals v. Hireright Solutions, Inc. individual complaint; confer with Mr. Bennett regarding Complaint; finalize Complaint.

23 hours.

October 2009      Draft summons cover letter forwarding lawsuit to Federal Court and Civil cover sheet in Ryals v. HireRight Solutions. Begin drafting individual Spence v. USIS to be filed in Eastern District of Virginia, Richmond Division; update Mr. Dooley on the number of class reps identified and signed up. Confer with Mr. Bennett about the prohibition of participating in competing class actions after speaking with Wisconsin Plaintiff's Counsel about his potential class claim against HireRight; confer with Mr. Bennett about Ryals and Spence cases vis a vis potential suit for McIlwain and, whether to file individual cases or Class Complaints; draft and file papers to dismiss Spence lawsuit without prejudice. Discussion with Mr. Bennett of significance of fact Ms. Spence never filed her dispute because she could not get through on the toll-free number to USIS because the menu is confusing if you do get through according to others. Continue to field phone calls from another two dozen individuals.

16 hours.

November 2009     Draft dispute letter for Sharon Spence and confer with her about how to process it. Continue fielding calls from dozens of prospective class reps

3

for whom the two year statute of limitations has not yet expired. And draft memos to file regarding conversations.

<u>6 hours</u>

December 2009

Receipt and review a list of 239 Eastern Virginia individuals for whom HireRight prepared negative reports in February 2008 and attempt to contact many of those individuals who live in the Richmond area; Confer with Mr. Bennett about target of 30 class reps. Receipt and review of e-mail exchange between Mr. Bennett and Mr. Erausquin about venue. Continue to interview potential class reps on the telephone. Research regarding issue of statutory damages in FCRA cases (per violation or per action as in FDCPA). Additional research regarding statutory damages. Drafting office memo on statutory damages – per violation vs. per action. Review and revise memo regarding statutory damages; research issues of whether under the FCRA punitive damages are recoverable in the absence of actual damages. Additional research on punitive damages issue, including *Safeco* decision draft office memo regarding the same.

<u>28 hours.</u>

January 2010

Receipt and review of additional list of potential class reps and pleading forms from Mr. Bennett including two Smith FCRA complaints and confer with Mr. Bennett regarding same. Continue screening potential class reps; confer with Mr. Bennett and review e-mails between Mr. Bennett and Mr. Erausquin; review additional list of potential class reps and drafting file memos. Continue to screen them on the telephone. Receipt and review proposed joint prosecution agreement and review e-mails between Ohio and Virginia counsel regarding same. Receipt and review of e-mail from Ohio regarding some of their individual inaccuracy cases pending against USIS and their status and comparing them to the Hall case which they had already resolved. Discuss with Ohio Counsel their prior dealings with Mr. Fleagle. Begin drafting Amended Class Complaint in Ryals; continue conferring with potential class representatives including signing up James E. Shivers, Calvin Turner, Ray L. Campbell, Leslie Childs, and Carter Corbett and Edwin Childs (no relation). Continue interviewing prospective class reps including Ruben A. Fuentes. Continue work on Amended Complaint including Hill and McIlwain who were mistakenly included in the original draft as having EB claims and had to be removed from that Count at the draft stage assuring that we have at least one Plaintiff for each count. File Amended Class Complaint and initiate service. Research whether multiple listings of the same convictions, etc., in a consumer report will render it "inaccurate". Additional research and drafting memo regarding multiple reporting of the same convictions in a consumer report. Review HireRight's 25-page

4

background check on Craig Cooper and review HireRight and USIS websites. Draft memo regarding above; research whether reporting of obsolete arrest information is a violation of the 1681c when it related to a conviction for which there is no time limit on reporting. Complete memo regarding Cooper and Gibson's claims against HireRight; several e-mails to and from LAB. Assist with revisions to Amended Complaint in Ryals v. HireRight; e-mail to Mr. Bennett regarding Amended Complaint.

<u>45</u> hours

February 2010     Receipt and review of letter from Brown & Brown insurance complaining that they were improperly served with a copy of the suit against USIS, Inc. which they claim is a subsidiary of their firm; investigate and confer and conclude that they registered agent for USIS, Inc is also the registered agent for the company now known as HireRight and the company affiliated with Brown & Brown, and the registered agent made the mistake; draft letter to representative of Brown & Brown after telephone conference with her. Identification of the proper Defendant who has the same registered agent; draft follow-up letter to Ms. Long of Brown & Brown explaining what occurred and asking her to return the lawsuit to the registered agent with a request that he forward it to the correct USIS; draft letter to Sharon Spence confirming that the suit was filed on her behalf along with others asking her to contact counsel upon receipt; draft letter to Mr. Ryals confirming suit had been filed on his behalf and asking him to file a dispute and drafting the dispute letter for him. Draft dispute letter for Mr. Taylor and brief letter to him confirming suit had been filed and asking him to file a dispute with USIS.

<u>5</u> hours.

March 2010     Contact all 17 class reps to provide them with status report and draft memorandum to file.

<u>2</u> hours.

5

April 2010            Receipt and review of letter from Mr. Bowman to Mr. Bennett regarding
                      his claim we sued the wrong corporate entities and asking us to drop one
                      or more of the Defendants from our suit; confer with Mr. Bennett; draft
                      detailed e-mail to Mr. Bennett regarding these issues.  Telephone
                      conference call with Ohio counsel and Mr. Bennett and Mr. Erausquin
                      including discussion of whether we would seek time additional time to
                      conduct discovery under FRCP 56.  Discussion with co-counsel about
                      possible need for affidavits.   Receipt and review of e-mails exchanged
                      between Mr. Bennett and Mr. Bowman.  Receipt and review of a number
                      of motions filed by the defense and discussion with co-counsel of
                      allocating responsibilities for response; begin work on FRCP 26 (a)1
                      disclosures with an eye toward defeating the defendants motion to change
                      venue.  Check criminal records of class reps to identify the ones whose
                      inaccuracies related to driving to support efforts to keep defendant.
                      "Explore" in the case.  Confer with co-counsel about initial pre-trial
                      conference which was not attended by all.  Receipt and review of
                      Scheduling Order from Court. Draft proposed declarations for seven of the
                      named Plaintiffs who have been most cooperative after telephone
                      conferences and in-person interviews with them.  Review of proposed
                      declarations and revise same; continue to confer with class reps especially
                      one who moved from the Richmond area.  Draft e-mail to Mr. Bennett and
                      Mr. Erausquin regarding issues. Discussion of whether to include the
                      names, cities, counties of residence, for the 100+ people that counsel
                      spoke to in search of potential class reps with result that we decided to
                      simply refer to the number without providing any details in declarations.
                      Review e-mail confirming two declarations that had been prepared and
                      forwarded and signed and received back in our office and two additional
                      that were expected within a day or two; review and finalize seven total
                      declarations.  Review FRCP 26(a)(1) declaration prepaid by Mr. Bennett.
                      Prepared a list of employers and potential employers mentioned in the
                      discussion with the named Plaintiffs and categories of damages and names
                      of damages all addressing the venue issue.  Receipt and review of e-mail
                      from Mr.Downing to Mr. Bennett in that regard.  Legal research regarding
                      affirmative defenses and draft memorandum to file.

                      <u>64</u> hours.


May 2010
                      Continue completing and refining a list of employers and potential employers
                      mentioned by the declarants.  Identify additional non-party witnesses and where
                      they lived, especially damages witnesses and all the documents obtained from
                      Plaintiffs to list the documents by category and not make them available in 26(a)1
                      disclosures.  Review Mr. Bennett's May 5, 2010 letter to opposing counsel in
                      response to his letter of the same date. Drafted am e-mail to Len May 7

concerning the service issue.   Legal research concerning how to deal with possible Court determination that the Defendant committed a negligent as opposed to a willful violation, such as in the face of such a finding seeking issue certification of the negligence finding and preserving the right to pursue individual damages and related alternatives such as the possibility of mini trials with respect to damages as opposed to class treatment of statutory and punitive damages; draft memorandum to file, and review findings with Mr. North and Mr. Bennett; research whether injunctive relief is available under the FCRA; draft memorandum to file; based on limited authority in favor of availability of injunctive relief under the FCRA, include request for injunctive relief for the class in Amended Complaint after discussion of relevant case law with Mr. Bennett. Research regarding disclosure of convictions obsolete under state lae and preemption, including recent case of Simon v. Direct TV; research regarding CRA disclosing convictions that, in terms of duration, exceed scope of the employers disclosure or application.   Additional research and drafting memo regarding the same.

<u>48.0</u> hours

June 2010   Confer with Mr. Bennett about venue issues in light of the fact that the Pennsylvania and New Jersey cases pending against HireRight in those venues were transferred to Oklahoma including possibility of filing an immediate motion for a Fourth Circuit only classcertification..  Draft memo to file. Review files of named Plaintiffs.  Prepare spreadsheet summary of reported criminal record of Merriweather, Shivers, and Cooper; draft memo evaluating each Plaintiff as a representative for a possible Fourth Circuit Class.  Revise Summary of class reps; draft questionnaire form for use in calling named representatives; phone calls to class reps Craig Cooper, Ruben Fuentes, attempts to call James Shivers.  Phone calls to class reps James Shivers and Franklin Hill in an attempt to locate Sharon Spence.  Draft memo regarding calls to named Plaintiffs with 1681i (dispute) claims; phone call from LAB; send copy of 1681i memo to LAB.

<u>19.50</u> hours.

July 2010   Begin conferring with all 15 named Plaintiffs to prepare them for their anticipated depositions.

<u>20</u> hours

August 2010   Receipt and review of 15 deposition notices and continue meeting with 15 named plaintiffs to prepare for scheduled depositions same. Receipt and review of defendants first set of interrogatories to each Plaintiff.  Confer with opposing

7

counsel regarding rescheduling pre-set depositions of certain Plaintiffs. Participate in conference call with opposing Counsel. Confer with Mr. Bennett about Mr. Epps and Mr. Turner who were not mentioned in the caption of the first paragraph of the Amended Complaint but were mentioned in the allegations of the Amended Complaint; additional discussions with opposing counsel setting deposition days and times and providing additional information about the Plaintiffs. Review proposed pleadings seeking stay and provide missing information; continue preparing Plaintiffs for their depositions. Confer with co-counsel about possible power point to use at anticipated private mediation to be supervised by Judge Dohnal. Confer with Mr. Bennett about guidelines for mediation such as with whom, when, the additional information needed to proceed, etc. Assist Donna in Mr. Bennett's office with subpoenas for 1681e(b) Plaintiffs; phone calls to Sharon Spence, Daniel Jackson, and Ed Childs. Review USIS and HireRight documents; prepare summary of all Plaintiff's files. Complete summaries of Plaintiff's cases' e-mails to Mr. Bennett and Mr. Erausquin; phone calls to named Plaintiffs regarding deposition notices. Phone calls regarding named Plaintiff's availability. Phone calls to Daniel Jackson and Craig Cooper; research class reps duties; draft outline for deposition preparation; deposition preparation of Charles Taylor by phone. Drive to and from Richmond and meet with Daniel Jackson, James Ryals and Byron Merriweather to prepare for depositions. Draft letters to Sharon Spence, James Shivers, and Craig Cooper; phon call to Cooper; send deposition preparation materials to each by Fed-Ex; calls to Greg Priebe, Ray Campbell and Carter Corbett. More calls regarding deposition preparation and scheduling, including Cynthia Tyler, Byron Merriweather, Daniel Jackson. Calls to all 15 named Plaintiffs regarding cancellations of depositions due to mediation and drafting confirmation letter. Emails to and from Mr. Erausquin regarding claim summaries. Prepare Cooper summary for mediation. Gather inquiry reports and other documents identifying the trucking companies that pulled reports on named plaintiffs. E-mail documents to Mr. Erausquin.

117 hours

September 2010          Prepare bios and employment histories for Plaintiffs and descriptions of their individual damages, if any. Reviewed Plaintiff's proposed mediation statement and the pre-mediation statement prepared by HireRight and responded to it. Phone call to Ruben Fuentes; review and summarize inquiry reports of Daniel Jackson, email to Mr. Erausquin regarding Jackson summary. Revised mediation summaries for Fuentes, Spence, and Jackson; draft Hill mediation summary. Emails to Mr. Erausquin attaching all four summaries. Gathering information about various trucking companies who made inquiries about named plaintiffs and other class members, summarizing various inquiry reports into tables.

58 hours.

8

| | |
|---|---|
| October 2010 | Additional preparation for travel and participate in mediation in D.C.  Review of Fuentes background report obtained in mediation document production; phone call to Fuentes.  Additional review of HireRight's mediation statement and exhibits.  Finalize memo regarding same to Mr. Bennett.  Email to Mr. Bennett sending composite Employer Inquiry Reports.  Phone calls to Fuentes, Jackson and Cooper regarding settlement authority for individual claims; attempted to also reach Spence Shivers and E. Childs.  Letters to Fuentes, Jackson and Cooper confirming authority.  Draft mediation summary on E. Childs.   Phone call to Carter Corbett and draft memo regarding same; internet research about Lester Coggins Trucking; memo regarding James Shivers claims; internet research regarding Annett Holdings, TMC Transportation, Abilene Motor Express. |

43 hours

| | |
|---|---|
| December 2010 | Draft memo on obsolescence claims of two plaintiffs, email same to Mr. Bennett. Draft e-mail to Mr. Bennett regarding evaluation of named Plaintiffs. |

2.25 hours

| | |
|---|---|
| January 2011 | Prepare for travel to and participate in mediation in D.C. |

26 hours

| | |
|---|---|
| May 2011 | Research attorney's fees in common fund class actions.  Additional research regarding attorney fees in common fund claqss actions; search for cases applying lodestar cross check and multipliers.  Organize lodestar cross check cases and multipliers into a table. |

21.75

| | |
|---|---|
| June 2011 | Deliver status report to all the Plaintiffs including having to locate some of them. |

5 hours

9